**Alfonso HARRIS, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 49S00–9701–CR–0033.

Supreme Court of Indiana.

Sept. 23, 1999.

Patricia Caress McMath, Indianapolis, IN, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant Alfonso Harris appeals convictions and sentences imposed for felony murder, attempted murder, robbery, criminal confinement and carrying a handgun without a license in connection with assaults on two men. Our analysis reveals no reversible error and we affirm.

This Court has jurisdiction over this direct appeal because the longest single sentence exceeds fifty years. Ind. Const. art. 7, § 4; Ind. Appellate Rule 4(A)(7).

## Background

On the evening of January 10, 1996, Julius Johnson, Kenny Elmore and Ronald Eldridge decided to rob a drug dealer named Marcus Coe. The next day, Elmore, Johnson and Eldridge picked up Defendant and the four men drove to Elmore's house. There, Eldridge contacted his step-brother, Coe, and told him that someone wanted to buy drugs. Coe eventually agreed to sell what he had.

While waiting for Coe to arrive, Defendant told Eldridge and Johnson that he was going to hit Coe with a pistol. Later, believing Coe was not going to appear, Eldridge and Johnson left.

In the meantime, Coe convinced Kelly Abney to drive him to Elmore's house. Abney parked his van in front of the house while Coe went inside; Coe said he would return shortly. After waiting thirty minutes, someone waved Abney into the house. Upon approaching the house, two men confronted Abney; one of them held a gun to his head.

When Abney entered the living room, he observed Coe sitting on the couch, tied up and bleeding. Abney was tied up and his watch, ring, shoes, jacket and ten dollars were taken. At this time, Abney was unable to identify the individuals in the house because the men wore masks over their faces.

The men placed Abney in a closet. Eventually, he managed to untie himself. He peered through the keyhole and noticed that a side door to the house was open. When a man, later identified as Elmore, opened the closet door, Abney was able to escape and run out the side door. Elmore chased Abney out of the house and a struggle ensued. During the struggle, Abney removed Elmore's mask. Defendant followed to assist Elmore. He pointed a gun at Abney's head and instructed Abney to return to the house. On the way back to the house, Abney knocked

the gun away and ran off. During the escape, Abney was shot in the arm.

Even after being shot, Abney was able to run to a nearby house for help where the police were finally summoned. Police were also dispatched to the 3200 block of North New Jersey where they found a blue van with Coe slumped in the driver's seat. Coe had died from multiple gunshot wounds.

On January 17, 1996, Defendant was charged with Murder,[1] Felony Murder,[2] Attempted Murder,[3] Conspiracy to Commit Robbery,[4] a class B felony, Robbery,[5] a class B felony, Criminal Confinement,[6] a class B felony, and Carrying a Handgun without a License.[7] After the first jury trial ended in a mistrial, a second jury trial, in which both Defendant and a co-defendant Kenny Elmore were tried, was held on September 16–20, 1996. At trial, both Abney and Trya Bentley, a woman who observed Abney's escape from an upstairs window in Elmore's house, identified Defendant as the man who shot Abney. The jury found Defendant guilty of felony murder, attempted murder, conspiracy to commit robbery, robbery, criminal confinement, and carrying a handgun without a license.

Additional facts will be provided as necessary.

## Discussion

### I

■ Defendant first contends that the prosecutor engaged in misconduct by improperly vouching for a witness's credibility. During cross-examination of Tyra Bentley, the following testimony and objections occurred (counsel for co-defendant Elmore questioning):

Q. And you're telling this jury that Rahshaun Robinson was with you.

A. Yes. He did ... he did....

Q. They don't tape him until the next day at 10:20 p.m. That is about thirty-three hours later.

A. Yes.

Q. Did he need thirty-three hours to get his story together?

A. I don't know.

Q. I see. You got yours together though by January 12th at 1:15?

[Prosecutor]: Your Honor, State objects to the tenor and the characterization of the question. The witness is trying to answer as truthfully as she can.

The Court: Nonetheless, this is cross examination....

[Counsel for Defendant]: Objection to counsel's comments, Your Honor. It's up to the jury to decide whether this witness is answering truthfully or not.

The Court: Let's not get into a bickering match, counsel. Go ahead, [counsel for co-defendant Elmore].

(R. at 408–09.)

While the prosecutor should not have referred to the truthfulness of the witness's testimony, we see no reversible error. The context of the comment was an objection to what the prosecutor perceived as badgering of the witness about the precise sequence of events which occurred months before. In effect, the prosecutor was saying, "Have defense counsel cut her some slack, judge, she's doing the best she can." Even if the prosecutor's comment caused Defendant some prejudice in the eyes of the jury, which we do not believe it did, we hold that it was cured when the trial court referred to the entire exchange as a "bickering match."

---

1. Ind.Code § 35–42–1–1(1) (1993).

2. *Id.* § 35–42–1–1(2).

3. *Id.* §§ 35–41–5–1 & 35–42–1–1(1).

4. *Id.* §§ 35–41–5–2 & 35–42–5–1.

5. *Id.* § 35–42–5–1.

6. *Id.* § 35–42–3–3.

7. *Id.* § 35–47–2–1.

## II

■ Defendant contends that Abney's pre-trial identification was the result of an unduly suggestive police procedure, which, in turn, tainted his in-court identification such that evidence of neither should have been admitted at trial. Defendant argues that the photographic array from which Abney identified him was impermissibly suggestive because (1) he was the sole person depicted in the array wearing a white shirt, and (2) only he and one other person are depicted in the array with hairstyles that resemble dreadlocks.

■ Due process of law under the Fourteenth Amendment requires suppression of testimony concerning a pre-trial identification when the procedure employed is impermissibly suggestive. *Parker v. State*, 698 N.E.2d 737, 740 (Ind. 1998); *James v. State*, 613 N.E.2d 15, 27 (Ind.1993); *Bell v. State*, 622 N.E.2d 450, 454 (Ind.1993). A photographic array is impermissibly suggestive if it raises a substantial likelihood of misidentification given the totality of the circumstances. *Parker*, 698 N.E.2d at 740; *James*, 613 N.E.2d at 27; *Hampton v. State*, 553 N.E.2d 132, 135 (Ind.1990). Factors to be considered in evaluating the likelihood of a misidentification include (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, and (4) the level of certainty demonstrated by the witness. *Parker*, 698 N.E.2d at 740; *James*, 613 N.E.2d at 27; *Lyons v. State*, 506 N.E.2d 813, 815 (Ind.1987).

A review of the photographs at issue discloses that each of the photographs depicted young African–American men who shared similar physical characteristics. Defendant's photograph is not distinguishable from the others by virtue of his clothing or hair style nor are any of his physical characteristics uniquely distinguishable from those of the other men depicted in the array.[8] *See Farrell v. State*, 622 N.E.2d 488, 494 (Ind.1993) (finding photographic array not impermissibly suggestive where the defendant wore a dark t-shirt and had a different hair style from others depicted in array); *Hampton*, 553 N.E.2d at 134–35 (depicting the defendant in "dress shirt" as opposed to casual shirt did not make the array impermissibly suggestive). Further, Abney reported to police officials that Defendant wore a black jacket at the time of the crime.[9] Defendant's appearance in the photo array wearing a white shirt suggests that Abney identified Defendant without relying on clothing. With respect to hairstyles, all of the men depicted in the array had some form of braids or "dreadlocks." Although the hairstyles were dissimilar in length, a photographic array is sufficient if the defendant "does not stand out so strikingly in his characteristics that he virtually is alone with respect to identifying features." *Pierce v. State*, 267 Ind. 240, 246, 369 N.E.2d 617, 620 (1977). Defendant did not stand out.

Given the totality of the circumstances, including Abney's description of Defendant and his level of certainty in identifying Defendant, we find the record demonstrates that the photographic array was not impermissibly suggestive. The trial court properly admitted this evidence. Where the pre-trial procedures are not impermissibly suggestive, both the evidence of the pre-trial and in-court identifications are held to be properly admitted

---

**8.** The photo array appears in the record as State's Exhibit 82. (R. at 1080.) The men in the photo array are dressed as follows: *Photo 1:* black T-shirt; *Photo 2:* black shirt with a black jacket; *Photo 3:* white T-shirt; *Photo 4:* yellow shirt with hooded black leather jacket; *Photo 5:* blue T-shirt with black jacket; *Photo 6:* black shirt with tan suede jacket. *Id.*

**9.** Abney told police officers that although the perpetrators wore masks, he had the opportunity to see the person who shot him long enough to provide an accurate description to police officials. He described Defendant as a dark skinned individual with a goatee who wore a black jacket at the time of the offense. Further, Abney testified that he got a good look at the person who shot him.

without further analysis. *Parker*, 698 N.E.2d at 740; *see also Bell*, 622 N.E.2d at 454 (citing *Coleman v. State*, 558 N.E.2d 1059 (Ind.1990)). Accordingly, we need not address whether an independent basis existed for Abney's in-court identification.

## III

█ Defendant next contends that the trial court improperly instructed the jury on the elements necessary for the State to prove he carried a handgun without a license. Defendant argues that the trial court failed to include as an element of the offense that he did not have a license to carry the handgun thereby placing the burden on him to show he possessed a valid license.[10]

The relevant statute states, "Except as provided in section 2 of this chapter, a person shall not carry a handgun in any vehicle or on or about his person, except in his dwelling, on his property or fixed place of business, without a license issued under this chapter being in his possession." Ind. Code § 35–47–2–1 (1993).[11] We have pre-

viously held that once the State proves that the defendant carried a handgun on or about his person, away from his dwelling or business, the burden shifts to the defendant to establish that he possessed a valid license. *Washington v. State*, 517 N.E.2d 77, 79 (Ind.1987). In *Washington*, we concluded that "[p]roof that [the defendant] had a license is an exception to the offense, and the burden is on [the defendant] to prove he possessed a valid license." *Id.; accord Williams v. State*, 700 N.E.2d 784, 787 (Ind.1998); *Taylor v. State*, 578 N.E.2d 664, 666 (Ind.1991); *Tonge v. State*, 575 N.E.2d 269, 271 (Ind. 1991). Further, Ind.Code § 35–47–2–24 places the burden on the defendant to prove he or she has a license or was exempt from the statute.[12]

Defendant, however, relies on *Tonge* to contend that we approved a jury instruction that placed the burden on the State to establish that the defendant possessed a valid license.[13] (Appellant Br. at 10.) In *Tonge*, we held that

**10.** The trial court's Instruction Number 10 provided as follows:
> The crime of carrying a handgun without a license is defined by statute as follows:
> A person shall not carry a handgun in any vehicle or on or about his person, except in his dwelling, on his property or fixed place of business, without a license issued under this chapter being in his possession. A person who violates this section commits a class A misdemeanor.
> To convict the defendant, the State must prove beyond a reasonable doubt each of the following elements:
> 1. The defendant
> 2. carried a handgun on or about his person
> 3. away from the defendant's dwelling, property or fixed place of business.
> If the State fails to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty.
> If the State does prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of carrying a handgun without a license, a class A misdemeanor.
> (R. at 172–73.)

**11.** Ind.Code § 35–47–2–2 (1993) provides a list of exemptions.

**12.** Ind.Code § 35–47–2–24 (1993) provides:
> (a) In an information or indictment brought for the enforcement of any provision of this chapter, it is not necessary to negate any exemption specified under this chapter, or to allege the absence of a license required under this chapter. The burden of proof is on the defendant to prove that he is exempt under section 2 of this chapter, or that he has a license as required under this chapter.
> (b) Whenever a person who has been arrested or charged with a violation of section 1 of this chapter presents a valid license to the prosecuting attorney or establishes that he is exempt under section 2 of this chapter, any prosecution for a violation of section 1 of this chapter shall be dismissed immediately, and all records of an arrest or proceedings following arrest shall be destroyed immediately.

**13.** The language Defendant relies upon follows:
> Instruction No. 3 informed the jury that the burden was on the defendant to prove that he had a license to carry a handgun as required by law or that he was exempt from the requirement for a license. The

when the State has established that a defendant was found to be in possession of a handgun and not in possession of a license to carry it, then the burden shifts to the defendant to come forward with any proof that he in fact was licensed to carry the weapon or was exempt from the statute.

*Tonge*, 575 N.E.2d at 271 (citing *Washington*, 517 N.E.2d at 77). Standing alone, it appears that this language in *Tonge* added an element for the State to prove—that the defendant was not in possession of a valid license. However, taken in its entirety, *Tonge* does not change previous holdings or the direction set by the legislature pursuant to Ind.Code § 35–47–2–24. In *Tonge*, we further explained that proving that a defendant had a license "is not an undue burden upon a defendant. This is information which is peculiar and readily available to him. To require the State to eliminate all possibilities of lawful carrying of the weapon would be a waste of judicial time and effort." *Tonge*, 575 N.E.2d at 271. Three months after *Tonge*, we held in *Taylor* that "[t]he fact that [the handgun] was being carried with or without a valid license was a matter for [defendant] to establish in an affirmative defense that he in fact did possess a valid license or an exception therefrom for the carrying of the gun." *Taylor*, 578 N.E.2d at 666 (citing *Washington*, 517 N.E.2d at 77).

We reaffirm that once the State has established that the defendant carried a handgun on or about his person, away from his residence or place of business, the burden then shifts to the defendant to demonstrate that he possessed a valid license. Accordingly, the trial court did not err in giving the jury instruction.

### IV

■ Defendant next asserts that his conviction and sentence for criminal con-

court also gave its Instruction No. 5, which correctly informed the jury that the State must prove each and every element of the offense of carrying a handgun

finement and robbery should be vacated. Defendant contends that double jeopardy principles prohibit the conviction and subsequent sentencing for both offenses because the force used for the confinement constituted the same force used to commit the robbery. However, the facts of this case, set forth under *Background, supra,* indicate confinement well beyond that used to commit the robbery. Abney was tied up and placed in a closet. And later he was apprehended when trying to escape. *Cf. Brown v. State,* 671 N.E.2d 401, 410 (Ind.1996) (affirming convictions for both confinement and robbery where the confinement was more extensive than that necessary to commit the robbery).

### V

■ Finally, Defendant contends that the trial court improperly imposed presumptive consecutive sentences for his felony murder and attempted murder convictions. Defendant argues that the trial court failed to articulate specific aggravating factors sufficient to justify the imposition of consecutive sentences.

■ In general, the legislature has prescribed standard sentences for each crime, allowing the sentencing court limited discretion to enhance each sentence to reflect aggravating circumstances or reduce the sentence to reflect mitigating circumstances. The legislature also permits sentences to be imposed consecutively if aggravating circumstances warrant. *Morgan v. State,* 675 N.E.2d 1067, 1073 (Ind. 1996) (citing *Reaves v. State,* 586 N.E.2d 847 (Ind.1992)); *see* Ind.Code § 35–38–1–7.1(b) (Supp.1995) (A court may consider aggravating circumstances in determining whether to impose consecutive sentences.).

■ When the trial court imposes a sentence other than the presumptive sentence, or imposes consecutive sentences

without a license, *which included the fact that [the defendant] was unlicensed.*
*Tonge,* 575 N.E.2d at 271 (emphasis added).

where not required to do so by statute, this Court will examine the record to insure that the court explained its reasons for selecting the sentence it imposed. *Archer v. State*, 689 N.E.2d 678, 683 (Ind. 1997) (citing *Hammons v. State*, 493 N.E.2d 1250, 1254 (Ind.1986)). The trial court's statement of reasons must include the following components: (1) identification of all significant aggravating and mitigating circumstances; (2) the specific facts and reasons that lead the court to find the existence of each such circumstance; and (3) an articulation demonstrating that the mitigating and aggravating circumstances have been evaluated and balanced in determining the sentence. *Mitchem v. State*, 685 N.E.2d 671, 678 (Ind.1997) (citing *Jones v. State*, 675 N.E.2d 1084, 1086 (Ind. 1996)).

The trial court identified and considered several aggravating factors in imposing consecutive sentences. Aggravating circumstances upon which the trial court relied included: Defendant's previous felony convictions; Defendant's previous interaction with handguns including the use of a handgun in this case; the nature and circumstances of the crime (victims were bound, tormented and beaten); and that this violent criminal act was planned.[14] The trial court identified no significant mitigating factors. The court imposed presumptive sentences for each conviction. The aggravating factors enumerated by the trial court serve as ample justification for the imposition of consecutive sentences for murder and attempted murder. And within its discussion of each aggravating

factor, the trial court demonstrated that it had engaged in an evaluative process of the sort necessary for meaningful appellate review. *Beason v. State*, 690 N.E.2d 277, 285 (Ind.1998). Accordingly, we affirm the imposition of consecutive presumptive sentences for the felony murder of Marcus Coe and the attempted murder of Kelly Abney and deny Defendant's request for the imposition of concurrent sentences.

### Conclusion

We affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, SELBY, and BOEHM, JJ., concur.

---

**14.** Defendant relies on the following statement from the sentencing order to assert that the trial court failed to articulate aggravating factors:

> Now I determine in your case that ... the felony murder count, and ... the attempted murder of Kelly Abney, should be consecutive. I make that determination because these are separate acts and because there are separate killings involved. That is Marcus Coe for the felony murder count, Kelly Abney for the attempted murder count.

(R. at 1615.) Defendant argues that the separate acts committed against separate victims

were mere elements of the crime establishing two separate offenses and were insufficient to support the imposition of consecutive sentences. (Appellant's Br. at 12–13.) But the facts indicated that Abney was not summoned into the house until after the confinement, beating and robbery of Coe was well underway. As such, the offenses committed against Abney represented a separate and distinct episode of criminal behavior. Consecutive sentences are appropriate in such circumstances. *See Henson v. State*, 707 N.E.2d 792, 796 (Ind.1999).