## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Yvette M. LaPlante
Keating & LaPlante, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Todd Dayon Covington JR.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

March 25, 2015

Court of Appeals Case No.
82A01-1407-CR-292

Appeal from the Vanderburgh
Circuit Court
The Honorable Kelli E. Fink,
Magistrate
Case No. 82C01-1403-FA-279

**Friedlander, Judge.**

[1] Todd Covington, Jr., appeals his convictions for class A felony Attempted Murder,[1] class A felony Robbery,[2] and class B felony Criminal Confinement.[3] He presents the following restated issues for review:

1. Did the trial court abuse its discretion by admitting a video of the victim taken immediately after the shooting?

2. Did the admission of the photo array in which the victim identified Covington amount to fundamental error?

3. Did the admission of testimony relating to an anonymous tip amount to fundamental error?

[2] We affirm.

[3] The victim in this case, Demetrius Fingers, worked as a barber and often kept cash on his person. Laniko Payne was one of his clients. Throughout the day on March 7, 2014, Payne came into the barber shop for a haircut. Each time Fingers was busy with another client. On his last evening visit, Payne was accompanied by Covington, whom Fingers did not know.

---

[1] The version of the attempt statute in effect at the time the offense was committed classified attempted murder as a class A felony. Ind. Code Ann. § 35-41-5-1(a) (West, Westlaw 2013). This statute has since been revised and in its current form reclassifies this as a Level 1 felony. *See* I.C. § 35-41-5-1(a) (West, Westlaw current with all 2014 Public Laws of the Second Regular Session and Second Regular Technical Session of the 118th General Assembly). The former version is applicable in this case because the offense was committed before July 1, 2014. *See id.*

[2] Ind. Code Ann. § 35-42-5-1 (West, Westlaw 2013). Under the revised statute, the offense has been reclassified as a Level 2 felony. *See* I.C. § 35-42-5-1 (West, Westlaw current with all 2014 Public Laws of the Second Regular Session and Second Regular Technical Session of the 118th General Assembly).

[3] I.C. § 35-42-3-3 (West, Westlaw 2013). Under the revised statute, the offense has been reclassified as a Level 3 felony. *See* I.C. § 35-42-3-3 (West, Westlaw current with all 2014 Public Laws of the Second Regular Session and Second Regular Technical Session of the 118th General Assembly).

[4] Fingers left after 7:00 p.m. to run some errands and came back to the empty shop about an hour later to see if Payne had returned for a haircut. Payne was waiting in his Black Expedition, and he asked Fingers to get in the truck. Fingers got into the back seat behind Payne. There were two other men inside. The one sitting next to Fingers was never identified. The other, later identified as Covington, was in the front passenger seat.

[5] Once Fingers was inside the truck, Payne locked the doors and the other two men pointed handguns at Fingers. Payne also had his weapon drawn. Covington immediately reached into Fingers's pocket and removed $300 to $400 in cash. Payne then demanded drugs, but Fingers denied having any. Payne referenced the nearby street on which Fingers lived. Fingers agreed to take them to a house on that street for drugs. Fingers believed there would be men there to help him.

[6] Payne parked across the street from the residence and remained in the truck while the other two escorted Fingers at gunpoint to the door. No one answered. The group turned to walk away, and Fingers decided to run. He was immediately shot multiple times from behind and fell to the ground. Payne quickly pulled the truck up and instructed the other two men to get inside. Before Fingers heard the truck pull away, someone fired two shots at his head.

[7] Fingers managed to get up and run to his house, but when there was no answer, he fell off the porch to the ground. Within minutes, responding officers found him in critical condition. Believing Fingers was near death, one of the officers

turned on his body camera and recorded Fingers as emergency personnel attended to him. During this time, Fingers was unable to identify his attackers.

[8] At the hospital, Fingers was treated for the seven gunshot wounds he sustained, more than one of which was life-threatening. He spent three days in the ICU and a week at the hospital.

[9] The day after the shooting, police developed a tip regarding Payne and created a photo array. Detective Michael Sides was able to show the array to Fingers on March 9, while he was still in the ICU but off the ventilator. Though extremely weak, Fingers was able to identify Payne by pointing to his photograph in the array.

[10] On March 10, police received an anonymous tip that individuals named Todd, Trey, and Poosie were involved in the shooting. As a result, police turned their attention to Covington and Maurice Nicholson, Jr. That same day, Detective Sides presented Fingers with two photo arrays. Fingers did not identify anyone in the array containing Nicholson's picture. Although he made no identification on the other array, Fingers did note that one of the pictures (the one next to Covington's) looked similar to one of his attackers but was not actually one of them.

[11] While watching the news the following morning in his hospital room, Fingers saw an unrelated news story with Covington's picture. He immediately informed his mother, who was in the room with him, that the man on the news was one of his attackers. His mother called Detective Sides, who then brought

a new photo array, which included an updated picture of Covington that had been taken the previous day. Fingers identified Covington's picture.

[12] The State charged Covington, on March 12, with attempted murder, robbery, and confinement, later adding a habitual offender allegation. Covington filed a motion to suppress the photo array in which he was identified. Following a hearing, the trial court denied the motion.

[13] Covington was tried by jury on May 21 and 22 and found guilty as charged. He waived his right to trial by jury on the habitual offender enhancement. At a hearing on June 20, the court first determined that Covington was a habitual offender. The court then sentenced him to an aggregate term of seventy-five years in prison. Covington now appeals, claiming several items of evidence were improperly admitted.

[14] A trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion. *Blount v. State*, 22 N.E.3d 559 (Ind. 2014). Accordingly, we will reverse only where the decision is clearly against the logic and effect of the facts and circumstances or it is a misinterpretation of the law. *Id*.

[15] When evidence is erroneously admitted, reversal is not required unless the error prejudiced the defendant's substantial rights. *Id*. We assess the probable impact the evidence had upon the jury in light of all other evidence that was properly admitted. *Id*. The error will be found harmless if the conviction is "supported by independent evidence of guilt such that there is little likelihood the challenged evidence contributed to the verdict". *Id*. at 564.

1.

Covington initially challenges the admission of the video from the responding officer's body camera. He claims, as he did below, that the evidence is cumulative and its probative value is substantially outweighed by its tendency to inflame and impassion the jury against him. He relies upon Indiana Evidence Rule 403, which provides that a trial court may exclude relevant evidence if the probative value of the evidence is "substantially outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."

The video in this case is of Fingers lying on the ground after being found by the responding officers. It shows his muffled and limited interactions with the officers and emergency personnel working on him. His gunshot wounds are not visible, nor does the video depict any particularly gruesome images. Moreover, during the thirteen-minute video, Fingers appears to be in a semi-conscious state and, though in pain, his demeanor is calm considering the circumstances.

With respect to unfair prejudice, we conclude that the tendency of the video to inflame the jury was not great. Further, to the extent it was cumulative of other testimony and evidence, it was only marginally so. The video provided the best evidence of victim's condition, his capacity to respond to police questioning, and the setting of the crime scene. In fact, the defense made much of the victim's failure to provide identifying information to the police immediately

after the shooting.[4]  The video, however, establishes that the lack of information provided at the scene was likely due to the victim's grave physical condition at the scene.

[19]   Because any potential for unfair prejudice does not outweigh the video's probative value, the trial court did not abuse its discretion by admitting the video into evidence over Covington's objection.

2.

[20]   Covington's next evidentiary claim is that the photo array in which he was identified was unduly suggestive and should not have been admitted.  Although Covington challenged this evidence in a pretrial motion to suppress, he did not object to its admission at trial.  Therefore, he claims admission of this evidence amounted to fundamental error.

[21]   "Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to 'make a fair trial impossible.'"  *Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014) (quoting *Benson v. State*, 762 N.E.2d 748,

---

[4] In her opening statement, defense counsel acknowledged that identity was the only issue in the case and argued:

> After Demetrius was shot he told three separate officers, the two responding officers and Detective Sides, he had no idea who shot him, he couldn't identify them, he didn't know who they were before, he didn't offer any sort of description, and you'll actually see that in the body cam videos.

*Transcript* at 10.

756 (Ind. 2002)). It is "a daunting standard that applies 'only in egregious circumstances.'" *Knapp v. State*, 9 N.E.3d 1274, 1281 (Ind. 2014) (quoting *Brown v. State*, 799 N.E.2d 1064, 1068 (Ind. 2003)). To establish fundamental error, the appellant must show that the trial court "erred in not *sua sponte* raising the issue" because the alleged error constitutes a clearly blatant violation of basic and elementary principles of due process and presents an undeniable and substantial potential for harm. *Ryan v. State*, 9 N.E.3d at 668.

[22] On review, our task is to look at the alleged error in the context of all that happened below and all relevant information given to the jury to determine whether the error had such an undeniable and substantial effect on the jury's decision that a fair trial was impossible. *Ryan v. State*, 9 N.E.3d 663. "Fundamental error is meant to permit appellate courts a means to correct the most egregious and blatant trial errors that otherwise would have been procedurally barred, not to provide a second bite at the apple for defense counsel who ignorantly, carelessly, or strategically fail to preserve an error." *Id.* at 668.

[23] Covington has made no showing of error, let alone fundamental error. "A photographic array is impermissibly suggestive if it raises a substantial likelihood of misidentification given the totality of the circumstances." *Harris v. State*, 716 N.E.2d 406, 410 (Ind. 1999). In evaluating the likelihood of a misidentification, the court considers factors such as (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; and

(4) the level of certainty demonstrated by the witness. *Harris v. State*, 716 N.E.2d 406.

[24] The fact that Fingers could not identify Covington in the array shown to him on March 10 (Array 1) did not foreclose the possibility of a reliable identification of Covington in the array on March 11 (Array 2).[5] Although taken only about a month apart, the photographs of Covington in the two arrays are strikingly different. Further, Array 2 was shown to Fingers after he had independently identified Covington while watching the local news, in which a picture of Covington[6] was displayed with respect to an unrelated crime. Fingers identified, with certainty, Covington's picture in Array 2, which contained photographs of six men with similar clothing, hair styles, skin tone, and facial features. The photographs were not suggestive, and there is no indication in the record that the procedures employed by Detective Sides when showing Fingers Array 2 were suggestive in any manner. Finally, we observe that Fingers testified at trial and identified Covington with 100% certainty, an identification that Covington does not challenge on appeal. Under the circumstances, Covington has failed to establish fundamental error.

3.

---

[5] Covington concedes that Fingers had ample opportunity to view his attackers and was likely paying close attention.

[6] Covington's claim that the picture shown in the news story was the same or similar to the one used in Array 2 is not supported by the record.

Covington's final evidentiary claim is also framed as fundamental error. He argues that Detective Sides should not have been allowed to provide hearsay testimony regarding an anonymous tip providing the names Todd, Trey, and Poosie as being involved in the shooting.

It is clear that Detective Sides's brief reference to the tip was for the purpose of establishing his course of investigation and, in particular, how he came to include Covington's picture in Array 1. *See Vaughn v. State*, 13 N.E.3d 873, 879 (Ind. Ct. App. 2014), *trans. denied* ("[s]tatements not admitted to prove the truth of the matter are not hearsay and do not run afoul of the hearsay rule"). Further, even if it was hearsay, admission of this evidence was harmless. The evidentiary value of the tip was weak and had no probable impact on the jury in light of the victim's own identification of Covington. Accordingly, Covington cannot establish fundamental error in this regard.

Judgment affirmed.

Kirsch, J., concurs. Crone, J., concurs in result.