## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 19 2017, 10:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. Burns
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Cleetus Nickson,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

December 19, 2017

Court of Appeals Case No.
49A05-1707-CR-1569

Appeal from the Marion Superior Court

The Honorable Linda E. Brown, Judge

Trial Court Cause No.
49G10-1701-CM-3276

**Brown, Judge.**

[1] Cleetus Nickson appeals his conviction for carrying a handgun without a license as a class A misdemeanor. He raises one issue which we revise and restate as whether the evidence is sufficient to sustain his conviction. We affirm.

## Facts and Procedural History

[2] On January 24, 2017, Indianapolis Metropolitan Police Officer Matt Minnis observed Nickson driving a vehicle and following the car in front of him very closely. Officer Minnis caught up to Nickson's vehicle, observed that his license plate had a 2016 sticker, determined that Nickson was speeding, and initiated a traffic stop because the plate was showing expired and Nickson was speeding.

[3] As Officer Minnis approached the passenger side, he observed Nickson reach around with his right hand to behind the passenger seat and then immediately bring it back to his lap area. Officer Minnis pulled his flashlight out and shined it through the passenger side, and saw a cloth gun holster in Nickson's lap. Officer Minnis requested back-up and told Nickson why he had pulled him over.

[4] After Officer Angelika Matuszczyk arrived at the scene, Officer Minnis asked for Nickson's license, Nickson gave him his license and a gun permit, and Officer Minnis went to his vehicle. Officer Matuszczyk shined her flashlight in the back of Nickson's vehicle, observed a handgun on the floorboard behind the passenger's seat, and asked the passenger to step out of the vehicle.

Officer Minnis performed a BMV check on Nickson which showed that Nickson was a valid driver but had a revoked handgun permit. Officer Minnis read Nickson his *Miranda* rights, and he acknowledged that he understood them. Officer Minnis informed another officer that the BMV check led him to discover that Nickson had a revoked handgun permit, and Nickson said, "Well I said the gun permit might have been revoked." Transcript at 10.

At some point, Officer Craig Solomon, a firearm liaison, arrived on the scene. Officer Solomon read Nickson his *Miranda* rights, and Nickson stated that he understood. Nickson told Officer Solomon that it was his gun, identified it by the make and caliber, told him where he purchased it, the purchase price, and that he had placed it on the rear floorboard of the car. Nickson also made "some mention of a restraining order involving his ex-wife." *Id.* at 27.

On January 25, 2017, the State charged Nickson with carrying a handgun without a license as a class A misdemeanor. On June 23, 2017, the court held a bench trial. Officers Minnis, Matuszczyk, and Solomon testified. After the State rested, Nickson's counsel moved for an involuntary dismissal and argued that the State had not proven that Nickson had carried a handgun knowingly without a valid handgun permit, and the court denied the motion.

Nickson then testified that he did not know that he had the gun in his car, that he normally kept the gun on him, and "that's why my holster was in the car." *Id.* at 45. He testified that he did not know whether his handgun permit had been revoked, he had never received any documentation stating that his

handgun might be revoked, and that he believed his license was valid. On cross-examination, Nickson testified that he received a protective order from his ex-wife and that he read that order. He stated that he never told Officer Solomon that the gun was his or that he placed it in the car. He also testified his protective order expired in 2015, that he thought he could carry after the protective order expired, and that he never made the statement that his permit might be revoked. When asked if he went through a process to have his gun license restored, Nickson answered: "Uh, I didn't know that I had to." *Id.* at 48. The court found Nickson guilty as charged and sentenced him to 365 days with 361 days suspended.

## *Discussion*

[9] The issue is whether the evidence is sufficient to sustain Nickson's conviction for carrying a handgun without a license as a class A misdemeanor. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess witness credibility or reweigh the evidence. *Id.* We consider conflicting evidence most favorably to the trial court's ruling. *Id.* We affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

[10] At the time of the offense, Ind. Code § 35-47-2-1 provided in part that "a person shall not carry a handgun in any vehicle or on or about the person's body without being licensed under this chapter to carry a handgun" and that "[a] person who knowingly or intentionally violates this section commits a Class A misdemeanor."[1] The Indiana Supreme Court has held that, "once the State has established that the defendant carried a handgun on or about his person, away from his residence or place of business, the burden then shifts to the defendant to demonstrate that he possessed a valid license." *Harris v. State*, 716 N.E.2d 406, 412 (Ind. 1999). *See also Wilson v. State*, 39 N.E.3d 705, 717 (Ind. Ct. App. 2015) ("Once the State demonstrates that a defendant had possession of a handgun on his body or in a vehicle, it then becomes the defendant's burden to demonstrate that he had a valid license to carry the handgun.") (citing *Armstrong v. State*, 742 N.E.2d 972, 977 (Ind. Ct. App. 2001)), *trans. denied*. Proof that the defendant had a license is an exception to the offense, and the burden is on the defendant to prove he possessed a valid license. *Harris*, 716 N.E.2d at 411. "Further, Ind. Code § 35-47-2-24 places the burden on the defendant to prove he or she has a license or was exempt from the statute."[2] *Id.*

---

[1] Subsequently amended by Pub. L. No. 221-2017, § 1 (eff. July 1, 2017).

[2] Ind. Code § 35-47-2-24 provides:

> (a) In an information or indictment brought for the enforcement of any provision of this chapter, it is not necessary to negate any exemption specified under this chapter, or to allege the absence of a license required under this chapter. The burden of proof is on the defendant to prove that he is exempt under section 2 of this chapter, or that he has a license as required under this chapter.

[11] Nickson acknowledges that the gun was found on the floor of the backseat of his vehicle and that he identified the gun as belonging to him. He argues that he denied knowledge of the gun's presence in the car and asserts that he believed he had a valid permit for the gun. He asserts he provided a "lifetime" gun permit to Officer Minnis and that there was insufficient evidence to demonstrate that his permit had been revoked. Appellant's Brief at 8. He contends that no certified record was submitted to show a revocation of the permit or when such revocation occurred. The State argues that Nickson failed to meet his burden to show that he had a valid license at the time he was carrying the handgun. It also contends that the evidence established that his license was revoked and that he was aware it was invalid at the time he carried a firearm in his vehicle.

[12] To the extent Nickson argues that he denied knowledge of the gun's presence in the car, the record reveals that Officer Minnis testified that he observed Nickson reach around with his right hand to behind the passenger seat and then immediately bring it back to his lap area and that he saw a cloth gun holster in Nickson's lap. Officer Matuszczyk testified that she observed a handgun on the floorboard behind the passenger's seat. Further, Officer Solomon testified that Nickson told him that he had placed the gun on the rear floorboard of the car.

---

(b) Whenever a person who has been arrested or charged with a violation of section 1 of this chapter presents a valid license to the prosecuting attorney or establishes that he is exempt under section 2 of this chapter, any prosecution for a violation of section 1 of this chapter shall be dismissed immediately, and all records of an arrest or proceedings following arrest shall be destroyed immediately.

[13]   With respect to Nickson's argument that he believed his gun permit was valid, we observe that, when asked what his BMV check showed, Officer Minnis answered: "Uh, that he was a valid driver I believe, but that he had a revoked handgun permit." Transcript at 7. When asked to explain the process for finding out that he had a revoked handgun permit, Officer Minnis stated:

> Uh, when you run someone's name in our system, if they've ever had one (1), a handgun permit that is, or had one (1) revoked, it will show up; and in this case it showed that he had had one (1) originally approved, and that it had been revoked at a later time.

*Id.* Officer Minnis also testified that he heard Nickson state: "Well I said the gun permit might have been revoked." *Id.* at 10. On cross-examination, Nickson's counsel stated: "Uh, now you indicated on direct that he had made a comment that – oh shit, that's right it might have got revoked." *Id.* at 16. Officer Minnis answered: "Correct." *Id.*

[14]   Under the circumstances, we conclude that the State presented evidence of a probative nature from which a reasonable trier of fact could have determined beyond a reasonable doubt that Nickson carried a handgun without a license and we cannot say that Nickson met his burden to demonstrate that he possessed a valid license.

### *Conclusion*

[15]   For the foregoing reasons, we affirm Nickson's conviction.

[16]   Affirmed.

Baker, J., and Riley, J., concur.