## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 15 2020, 7:49 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Frederick Vaiana
Voyles Vaiana Lukemeyer Baldwin & Webb
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

F. Aaron Negangard
Chief Deputy Attorney General of Indiana

Tiffany A. McCoy
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Dion Johnson,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

January 15, 2020

Court of Appeals Case No.
19A-CR-70

Appeal from the Marion Superior Court

The Honorable Mark D. Stoner, Judge

Trial Court Cause No.
49G06-1704-MR-13155

**Bradford, Chief Judge.**

# Case Summary

Dion Johnson was convicted of murder after he shot and killed Terence Hill. On appeal, Johnson contends that the trial court abused its discretion in admitting certain pre-trial identification evidence. We affirm.

# Facts and Procedural History[1]

In April of 2017, Xiyya Depp was in a relationship and lived with Hill. Around mid-day on April 6, 2017, Depp, Hill, Michele Moore, and Theodore Washington went to a Family Dollar store together. They then went across the street to a gas station where Hill interacted with Johnson, who was known to Depp as "Sane." The group briefly went back to the Family Dollar before returning to the gas station. Back at the gas station, Hill went to speak with Johnson in Johnson's burgundy/maroon-colored vehicle.

Later that evening, Depp, Hill, Moore, Washington, and Johnson ended up at Depp's and Hill's apartment. An unidentified friend of Johnson's joined the group at the apartment. After Hill and Johnson snorted powdered cocaine, Hill went into the bedroom and laid down on the bed beside Depp. Hill "seemed nervous and he was shaking." Tr. Vol. II p. 62. Johnson eventually came into the bedroom with a gun in his hand and began accusing Hill of setting him up

---

[1] We held oral argument in this case at Mississinewa High School on December 16, 2019. We wish to thank counsel for their advocacy and extend our appreciation to the faculty, staff, and students of Mississinewa for their fine hospitality.

and working with "the feds." Tr. Vol. II p. 63. Johnson instructed his friend to watch the front door to the apartment and not to let anyone in or out.

[4] Johnson ordered everyone but Hill to sit in the living room while he and Hill remained in the bedroom. Johnson briefly left the bedroom and came to the living room before becoming agitated and aggressive and going back into the bedroom, still holding the gun. Soon thereafter, multiple gunshots were fired in the bedroom. After hearing the gunshots, Depp and Washington ran from the apartment. Moore went to the kitchen and "jumped on top of the refrigerator." Tr. Vol. II p. 124. From her position on top of the refrigerator, Moore observed Johnson, with the gun tucked in his waistband, and his friend "swipe[] the table with their arms" and "thr[o]w chairs and stuff" before running out of the apartment. Tr. Vol. II p. 125. Depp observed Johnson and his friend run from the apartment and leave the scene in Johnson's burgundy-colored car. Depp ran back into the apartment and found Hill on the bed with "blood coming out of ears, and … bullet holes in his shirt … just laying there with his eyes open, kind of." Tr. Vol. II p. 73.

[5] Indianapolis Metropolitan Police Officers Richard Tyner and Amanda Gomez responded to a dispatch involving "a person shot or shots fired" at the apartment. Tr. Vol. II p. 39. Upon arriving at the apartment, Officer Tyner observed that Depp, Moore, and Washington were hysterical and crying. Officer Tyner entered the apartment and found Hill's lifeless body on the bed.

[6]     Investigating officers transported Depp, Moore, and Washington to the homicide office where they were separately interviewed by Detectives Christopher Craighill and Charles Benner. During her interview, Depp told Detective Benner that the shooter was someone that she knew as "Sane" and that "Sane" was one of Hill's Facebook friends. Following the conclusion of the Depp's interview, Depp and Detective Benner scrolled through Hill's Facebook friends. While scrolling through the list, Depp pointed out a picture that she identified as the shooter. The picture in question was associated with the name "Donnie Ray Son." Detective Benner escorted Depp from the room before completing further research.

[7]     Upon resuming his investigation, Detective Benner went to the Facebook page associated with "Donnie Ray Son." He observed that under the name "Donnie Ray Son" was the name "Sane Savage." State's Ex. 86B. Detective Benner further observed two photographs of the individual identified by Depp as the shooter kneeling next to the gravestones of Diamond Rayshelle Johnson and Donnie Ray Johnson. Using this information, Detective Benner checked the police database and found "that Diamond Johnson has a brother named Dion Johnson whose dad is also Donnie Ray Johnson." Tr. Vol. II p. 220. Detective Benner found a booking photo of Johnson, compared it to the Facebook photos of Donnie Ray Son, and determined that "Donnie Ray Son was Dion Johnson." Tr. Vol. II p. 220.

[8]     Detective Benner used the prior booking photograph of Johnson to create a photo array containing the photograph along with five photographs of similar-

looking individuals. Depp subsequently identified Johnson from the photo array as the shooter. The photo array was shown to Moore, with Moore also identifying Johnson as the shooter.

[9] On April 10, 2017, the State charged Johnson with murder and Class A misdemeanor carrying a handgun without a license. Prior to trial, Johnson moved to suppress the pre-trial photo array and Depp's pre-trial identification of him as the shooter. Following an August 9, 2018 hearing, the trial court denied Johnson's motion. The matter proceeded to a jury trial, during which both Depp and Moore identified Johnson as the shooter. The jury subsequently found Johnson guilty as charged. On December 6, 2018, the trial court sentenced Johnson to fifty-five years in the Department of Correction.[2]

# Discussion and Decision

[10] While Johnson frames the issue as whether the trial court erred by failing to suppress the challenged identification evidence, Johnson did not seek an interlocutory appeal but rather appeals following the conclusion of trial. As such, the issue is more appropriately framed as "whether the trial court abused its discretion by admitting the evidence at trial." *Washington v. State*, 784 N.E.2d 584, 587 (Ind. Ct. App. 2003).

> The admission or exclusion of evidence is entrusted to the discretion of the trial court. We will reverse a trial court's

---

[2] Johnson's handgun conviction was dismissed prior to sentencing.

decision only for an abuse of discretion. We will consider the conflicting evidence most favorable to the trial court's ruling and any uncontested evidence favorable to the defendant. An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or it misinterprets the law. In determining whether an error in the introduction of evidence affected an appellant's substantial rights, we assess the probable impact of the evidence on the jury. Admission of evidence is harmless and is not grounds for reversal where the evidence is merely cumulative of other evidence admitted.

*Collins v. State*, 966 N.E.2d 96, 104 (Ind. Ct. App. 2012) (internal citations omitted). The trial court's ruling will be upheld "if it is sustainable on any legal theory supported by the record, even if the trial court did not use that theory." *Rush v. State*, 881 N.E.2d 46, 50 (Ind. Ct. App. 2008).

[11] In challenging the admission of the photo array and Depp's pre-trial identification testimony, Johnson argues that "[w]ith the seed of [Depp's and Detective Benner's] prior discussion and review of photographs from [Hill's] Facebook page firmly planted in Depp's mind, she selected Johnson from the array. This procedure was unduly suggestive, and the trial court erred by failing to sustain Johnson's motion to suppress evidence." Appellant's Br. p. 13. Johnson further argues that

> [Detective] Benner's scrolling of Hill's Facebook page impermissibly suggested Depp's identification of Johnson. [Detective] Benner knew from Depp's statement the suspect in shooting Hill was identified as "Sane." He could have, and should have, scrolled through Hill's Facebook page in her absence and reached the same conclusions. The constitutional

harm occurs because of the extent [Detective] Benner incorporated Depp into his investigation. Her viewing of Hill's Facebook page contemporaneously with and under the control of [Detective] Benner, impermissibly suggested the subsequent photo array identification by her of Johnson.

Appellant's Br. pp. 14–15.

[12] "Due process of law under the Fourteenth Amendment requires suppression of testimony concerning a pre-trial identification when the procedure employed is impermissibly suggestive." *Harris v. State*, 716 N.E.2d 406, 410 (Ind. 1999).

> A photographic array is impermissibly suggestive if it raises a substantial likelihood of misidentification given the totality of the circumstances. Factors to be considered in evaluating the likelihood of a misidentification include (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, and (4) the level of certainty demonstrated by the witness.

*Id.* (internal citation omitted). "In order to succeed on this argument, the defendant must demonstrate that law enforcement personnel or the prosecutors were responsible for the unnecessarily suggestive identification procedure." *O'Connell v. State*, 742 N.E.2d 943, 948 (Ind. 2001).

[13] In challenging the admission of Depp's identification testimony, Johnson argues that the process used by Detective Benner to create the photo array was impermissibly suggestive. Specifically, he argues that Detective Benner's "scrolling of Hill's Facebook page impermissibly suggested Depp's identification of Johnson." Appellant's Br. p. 14. Johnson, however, does not

explain what about Detective Benner's actions was impermissibly suggestive, merely arguing that Detective Benner should have completed his initial review of Hill's Facebook friends without Depp present.

[14] We are unable to say that the mere act of scrolling through Facebook with a witness amounts to impermissibly suggestive behavior by Detective Benner. Depp was not identifying an unknown individual. Instead, she was identifying an individual with whom she had been familiar, by sight and by nickname, for approximately five years. Depp informed Detective Benner that the shooter was one of Hill's Facebook friends. She then sat with Detective Benner and scrolled through a list of Hill's Facebook friends, stopping and identifying a picture as a picture of the shooter. After Depp identified the picture as being a picture of the shooter, Detective Benner refrained from completing any further investigation into the identity of the person in the photograph until Depp was no longer present.

[15] Johnson has pointed to nothing in the record indicating that Detective Benner acted in a suggestive manner while scrolling through Hill's Facebook friends with Depp. Johnson merely argues that Detective Benner should not have scrolled though the page while Depp was present. Given Depp's familiarity with Johnson, we are unpersuaded that the mere fact that she looked through Hill's Facebook friends with Detective Benner had any impact on her identifications of Johnson as the shooter. We therefore conclude that the trial court did not abuse its discretion in admitting the challenged evidence at trial.

The judgment of the trial court is affirmed.

Baker, J., and Riley, J., concur.