

**FILED**

Nov 05 2015, 7:53 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Andrea L. Ciobanu
Alex Beeman
Ciobanu Law, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Kelly A. Miklos
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Noah Pittman,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

November 5, 2015

Court of Appeals Case No.
49A05-1504-CR-137

Appeal from the Marion Superior
Court

The Honorable Kurt M. Eisgruber,
Judge

The Honorable Steven J. Rubick,
Magistrate

Trial Court Cause No.
49G01-1501-FB-1101

**Brown, Judge.**

Noah Pittman appeals his convictions and sentence for attempted stalking as a class B felony and carrying a handgun without a license as a class A misdemeanor. Pittman raises five issues which we revise and restate as:

I. Whether the trial court abused its discretion in denying Pittman's motion to dismiss the charge of attempted stalking;

II. Whether the general attempt statute, as applied in this case, is void for vagueness;

III. Whether the evidence is sufficient to sustain Pittman's conviction of attempted stalking;

IV. Whether Pittman's sentence for attempted stalking as a class B felony is unconstitutional under Article 1, Section 16 of the Indiana Constitution; and

V. Whether the crime of carrying a handgun without a license is facially unconstitutional.

We affirm.

### Facts and Procedural History

Pittman and Natasha Small had been in a relationship for approximately two years and had a child together. Small had previously tried to end the relationship "a couple times" prior to March 2014 but was unsuccessful in doing so. Transcript at 44. Pittman's mother Tina Owens watched the child five days a week. On March 4, 2014, Small and Pittman "were broken up but still kind of around each other occasionally. He would sometimes express that he wanted to get back together and [she] would give him terms and . . . it just wouldn't happen so [they] were in an awkward stage." *Id.* at 45. At about ten

o'clock that evening, Small was at her apartment when Pittman came over, and they discussed that he would sleep on the couch and they would "talk later." *Id.* at 46. During the night, Small was "really tired" and kept trying to go to sleep, but Pittman kept waking her and asking questions. *Id.*

[3] The next morning, March 5, 2014, they "decided to talk about [their] relationship later on that day," Small believed that they "left off on a pretty good note," but soon after leaving her apartment to run errands Pittman called her and was "kind of upset." *Id.* at 47. He called "around ten times," in which the calls "started out . . . just like mildly upset" or "kind of annoyed," but when she ignored him or did not react the way she believed he wanted her to react "he'd call [her] and it became back to back calls" and his mood "would be different each time," ranging from "screaming or laughing or crying -- whining, not speaking clearly, mumbling, slamming the phone against things . . . ." *Id.* at 47-48. Pittman "said that he was gonna kill" Small "a couple of times," but she "kind of shrugged it off . . . ." *Id.* at 48. He also told her that she "better not go home" and that she "should stay the night with [her] mother." *Id.* at 49.

[4] One of the errands Small ran that day was to take the child to a check up at a primary care center. While at the clinic, Small observed Pittman in the parking lot on his bicycle making circles, and she assumed he was looking for her car. She spoke with Owens and told Owens that she and Pittman had argued and he had gone home, that she was at the doctor's office with her child and observed him riding his bike in the parking lot, and that she was annoyed because she had told him not to show up there. *Id.* at 38, 51. Owens returned to her home

to check whether Pittman had taken the spare set of keys to Small's vehicle, and saw that Pittman's bedroom door had been damaged, that her gun case was on her bedroom floor, and that her gun was gone. Owens called Small, who was still at the doctor's office, told her that her gun was missing and that it was possible Pittman had the gun and bullets on him, and advised Small not to leave and to call the police.

[5] Small called 911 and told the dispatcher where she was, that her ex-boyfriend was there looking for her, and that his mother had just phoned to tell her she believed he had a gun. Small stated further that Pittman had earlier that day threatened to kill her, she gave a physical description of him, and asked the 911 dispatcher how she could obtain a restraining order against Pittman because she believed it was "necessary now." State's Exhibit 5 at 5:50-5:53.

[6] Indianapolis Metropolitan Police Officer Theodore Sadownik arrived approximately five minutes later at around 2:17 p.m. While on the way to the scene, he spoke with Owens. After arriving, a security guard directed him to Pittman, and he approached Pittman, who was leaning against a vehicle and had his hands in the sleeves of his "puffy coat." Transcript at 25. Officer Sadownik believed Pittman was armed with a Glock .45 caliber handgun and ordered him to put his hands up. Pittman complied and was placed in handcuffs. Officer Sadownik patted him down, asked him if he was armed and, if so, where the gun was located, and Pittman told him that he had a gun in his backpack. The officer searched the backpack and discovered the gun and a matching magazine loaded with nine .45 caliber rounds, although the gun did

not have a bullet in the chamber and did not have the magazine inserted, along with a box cutter and a t-shirt. Officer Sadownik placed Pittman in the back of his patrol vehicle and asked him why he had the gun and what his intentions were, and Pittman stated that "he was there to scare his girlfriend." *Id.* at 27. The officer observed that Pittman stated this "[j]okingly," and that Pittman "chuckled and thought it was funny." *Id.*

[7] Officer Sadownik called Small and asked her to come and speak with him, but she would not come because she said "[s]he was too scared." *Id.* He spoke with her briefly on the phone and then called a domestic violence advocate to assist her. Small was advised by an officer to stay at the Julian Center, and she did so. Indianapolis Metropolitan Police Department Detective Scott Hunt took a statement from her regarding the incident during which Small "stated that she was fearful." *Id.* at 60.

[8] On January 13, 2015, the State filed an information which, as amended on February 18, 2015, charged Pittman with Count I, attempted stalking as a class B felony; and Count II, carrying a handgun without a license as a class A misdemeanor.[1] On January 21, 2015, Pittman filed a motion to dismiss Count I

---

[1] The original charging information is not contained in the record. However, the State's motion to amend reveals that the amendment was limited to changing certain language in the initial charging information related to Count I and did not change the counts Pittman faced.

Also, in his Statement of the Case, Pittman directs our attention to the docket for Cause No. 49G01-1403-FB-011363, which states that on March 7, 2014, Pittman was charged with Count I, stalking as a class B felony; and Count II, carrying a handgun without a license as a class A misdemeanor, and that charges under this cause number were dismissed on January 13, 2015, the same day the State filed the charging information under the instant cause number. Pittman further cites to Paragraph 3 of his motion to dismiss filed on

and a memorandum of law in support in which he argued that Indiana's "stalking statute is unique, in that the Indiana legislature has specifically required that a defendant be successful in causing the victim to experience a specific mental state" and that "[d]ue to the plain language of the statute, stalking cannot be charged as an 'attempt' crime in Indiana." Appellant's Appendix at 8. The court held a final pretrial conference on February 10, 2015, and discussed Pittman's motion to dismiss and took the matter under advisement. On February 17, 2015, the court issued an order denying Pittman's motion to dismiss.

On February 18, 2015, a jury trial was held in which evidence consistent with the foregoing was presented. The jury found Pittman guilty as charged. On March 13, 2015, the court sentenced Pittman to an aggregate six-year term, including four years executed to be served in community corrections followed by two years suspended to probation.

## *Discussion*

Before addressing the issues raised by Pittman, we recite the applicable criminal statutes. At the time of the offense, Ind. Code § 35-45-10-5 provided in part:

---

January 21, 2015, for the proposition that "[d]uring the course of discovery the alleged victim was deposed. . . . [and] stated that she was not in fear for her safety. After this deposition, the state dismissed the case and refilled [sic] under the above captioned cause number." Appellant's Appendix at 8. We note that a transcript of this deposition is not contained in the record on appeal.

(a) A person who stalks another person commits stalking, a Class D felony.

* * * * *

(c) The offense is a Class B felony if:

(1) the act or acts were committed while the person was armed with a deadly weapon . . . .

(Subsequently amended by Pub. L. No. 158-2013, § 541 (eff. July 1, 2014)). Ind. Code § 35-45-10-1 defines "stalk" as "a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened" and "does not include statutorily or constitutionally protected activity." Also, Ind. Code § 35-45-10-2 defines "harassment" as "conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress" and similarly "does not include statutorily or constitutionally protected activity . . . ." Ind. Code § 35-45-10-3 defines "impermissible contact" as "includ[ing] but is not limited to knowingly or intentionally following or pursuing the victim." Finally, Ind. Code § 35-45-10-4 provides that "'victim' means a person who is the object of stalking."

[11] Furthermore, Ind. Code § 35-41-5-1, the general attempt statute, provided at the time of the offense as follows:

> (a) A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime. An attempt to commit a crime is a felony or misdemeanor of the same class as the crime attempted. However, an attempt to commit murder is a Class A felony.

> (b) It is no defense that, because of a misapprehension of the circumstances, it would have been impossible for the accused person to commit the crime attempted.

(Subsequently amended by Pub. L. No. 168-2014, § 64 (eff. July 1, 2014)).

## I.

[12] The first issue is whether the court abused its discretion in denying Pittman's motion to dismiss the charge of attempted stalking as a class B felony. We review a trial court's ruling on a motion to dismiss a charging information for an abuse of discretion, which occurs only if a trial court's decision is clearly against the logic and effect of the facts and circumstances. *An-Hung Yao v. State*, 975 N.E.2d 1273, 1276 (Ind. 2012). A trial court also abuses its discretion when it misinterprets the law. *Id.*

[13] At the outset, we observe that Ind. Code § 35-34-1-4(a) permits dismissal of a charging information on motion by a defendant "upon any of the following grounds":

(1) The indictment or information, or any count thereof, is defective under section 6 of this chapter.

(2) Misjoinder of offenses or parties defendant, or duplicity of allegation in counts.

(3) The grand jury proceeding was defective.

(4) The indictment or information does not state the offense with sufficient certainty.

(5) The facts stated do not constitute an offense.

(6) The defendant has immunity with respect to the offense charged.

(7) The prosecution is barred by reason of a previous prosecution.

(8) The prosecution is untimely brought.

(9) The defendant has been denied the right to a speedy trial.

(10) There exists some jurisdictional impediment to conviction of the defendant for the offense charged.

(11) Any other ground that is a basis for dismissal as a matter of law.

In this case, Pittman did not cite to Ind. Code § 35-34-1-4 in his motion to dismiss, and he does not state on appeal which provision of the statute warrants dismissal. The State observes in its brief that Ind. Code § 35-34-1-4(a)(1)

provides that dismissal is warranted where the "information, or any count thereof, is defective under section 6 of this chapter," and that Ind. Code § 35-34-1-6(a)(3) provides that "[a]n indictment or information is defective when . . . the statute defining the offense charged is unconstitutional or otherwise invalid." Although Pittman raises constitutional challenges which we discuss below, for the purposes of his motion to dismiss his arguments are based on the purported invalidity of Count I, where in Paragraph 4 he argued specifically that "[d]ue to the plain language of the statute, stalking can not be charged as an 'attempt' crime in Indiana. To allow otherwise would *invalidate* the legislative intent and go against the plain language of the statute." Appellant's Appendix at 8 (emphasis added).

[14] Pittman argues that "[u]nlike many crimes, stalking has a success or result element" where the statute defining what constitutes "stalking" includes that the defendant's conduct "actually causes the victim to feel terrorized, frightened, intimidated, or threatened." Appellant's Brief at 17 (quoting Ind. Code § 35-45-10-1) (emphasis omitted). He suggests that "[a] logical and factual fallacy" therefore occurs when a person is charged with stalking as an attempt due to the general attempt statute's provision that legal or factual impossibility is not a defense for the accused person to commit the crime attempted because in such a case "a defendant can be charged and convicted for conduct as an attempt crime that is actually not criminal conduct and is only criminal conduct when charged as an attempt." *Id.* He states that "it appears clear to [him] that the legislature intended to abrogate" the attempt statute "by

including a success or result element to prove stalking." *Id.* He argues that "[t]he stalking statute, the more specific statute, should prevail over the general attempt, general statute, in this case to avoid the illogical and absurd application of both statutes" because "[i]t is simply evident that the legislature did not intend to punish an attempt stalking unless there was a present ability to do so." *Id.* at 18.

[15] The State contends that the court properly denied Pittman's motion to dismiss and that his suggestion that a charge of attempted stalking is absurd or based on a legal fallacy is "neither supported by the facts or the plain language of the statutes and must fail." Appellee's Brief at 11. The State notes that Pittman's argument is based on an "incorrect premise that the State must prove all of the elements of the crime that is being attempted in addition to the elements of the attempt statute." *Id.* at 11-12. It argues that the legislature criminalized actions made with the requisite culpability that constitute a substantial step for the commission of that crime "even if that behavior does not meet all of the elements of the crime the defendant is attempting to commit." *Id.* at 12. The State analogizes to other attempted crimes, including attempted rape and attempted child solicitation, which similarly do not require the State to prove all of the elements of the completed crime. The State also argues that the legislature specifically does not permit the defense of impossibility even if it would have been available had the attempted crime been completed and been charged and that, in any event, Pittman fails to articulate how the defense of impossibility would have been available to him. The State further asserts that

"the record does not support Pittman's claims as they rest on unsupported statements" in his brief and that "there are multiple instances in the record to demonstrate that the victim felt frightened, intimidated, or threatened." *Id.* at 14. The State's position is that it was not required to prove that Pittman actually caused Small to feel terrorized, frightened, intimidated, or threatened to prove that he was guilty of attempted stalking but that, if it did, evidence was presented which satisfied that element. Finally, it states that "under Pittman's logic, no person could be convicted of attempted murder or conspiracy to commit murder unless the intended victim is actually killed . . . ." *Id.* at 16.

[16] The Indiana Supreme Court discussed the general attempt statute in *King v. State*, 921 N.E.2d 1288 (Ind. 2010). In *King*, the defendant was convicted of, among other things, attempted dissemination of matter harmful to minors, in which the completed crime is governed by Ind. Code § 35-49-3-3 and provided at the time in relevant part:

> (a) Except as provided in subsection (b), a person who knowingly or intentionally:
>
> > (1) disseminates matter to minors that is harmful to minors;
>
> > \* \* \* \* \*
>
> commits a Class D felony.
>
> (b) This section does not apply if a person disseminates, displays, or makes available the matter described in subsection (a) through

the Internet, computer electronic transfer, or a computer network unless:

> (1) the matter is obscene under IC 35-49-2-1;

> (2) the matter is child pornography under IC 35-42-4-4; or

> (3) the person distributes the matter to a child less than eighteen (18) years of age believing or intending that the recipient is a child less than eighteen (18) years of age.

921 N.E.2d at 1290 (quoting Ind. Code § 35-49-3-3 (subsequently amended by Pub. L. No. 158-2013, § 648 (eff. July 1, 2014))).

[17] King noted on appeal that "the completed offense of Dissemination unambiguously requires that the proscribed Internet matter be distributed to a child less than eighteen years of age" and made two principal arguments based thereon. *Id.* First, he emphasized "the language of the Attempt statute that requires both that the defendant act with the culpability required 'for commission of the crime' and that the defendant engage in conduct that constitutes a substantial step 'toward commission of the crime,'" and he asserted that "[b]ecause it is not a crime to send [such matter] over the internet to a person who is over 18 . . . it is not a crime to attempt to engage in that activity." *Id.* He also argued that "subsection (b)(3) of the Dissemination statute operates to exempt the statute from the general Attempt statute and indicates the legislature's intent not to criminalize the Internet transmission of matter harmful to minors unless the recipient is actually a minor." *Id.*

[18] The Court observed that shortly after the enactment of the attempt statute in 1976 "this Court made clear that the new statute rejected prior views that limited attempt crimes to 'conduct which will apparently result in the crime, unless interrupted by circumstances independent of the doer's will.'" *Id.* (quoting *Zickefoose v. State*, 270 Ind. 618, 623, 388 N.E.2d 507, 510 (1979)). "Rather, we held that the 'new' general attempt statute 'now focuses on the substantial step that the defendant has completed, not on what was left undone.'" *Id.* (quoting *Zickefoose*, 270 Ind. at 623, 388 N.E.2d at 510). The Court also rejected the historical view that impossibility was a defense to an attempt crime, noting that "[i]t is not necessary that there be a present ability to complete the crime, nor [is it] necessary that the crime be factually possible." *Id.* at 1290-1291 (quoting *Zickefoose*, 270 Ind. at 623, 388 N.E.2d at 510).

[19] The Court found that King, while acting with the culpability required to commit Dissemination of Matter Harmful to Minors, "took the substantial step of transmitting by the Internet such proscribed matter to a person he believed was a fifteen-year-old girl." *Id.* at 1291. It held that "[t]his substantial step, done with the culpability required for commission of the Dissemination offense, constitutes the charged offense of Attempted Dissemination of Matter Harmful to Minors" and that it mattered "not that his intended recipient was an adult; the Attempt statute makes clear that such 'a misapprehension of the circumstances' is no defense." *Id.* (citing Ind. Code § 35-41-5-1(b); *Zickefoose*, 270 Ind. at 623, 388 N.E.2d at 510). It further found that although "the unambiguous language of the Dissemination statute clearly requires that, for

the commission of the completed offense, the harmful matter must in fact be distributed to a child less than eighteen years of age," this fact did not manifest "a legislative intent to foreclose application of the general Attempt statute to prosecute unsuccessful attempts to commit such Dissemination." *Id.* It concluded:

> The essence of an attempt is that one or more elements of an offense are not fully satisfied, but a defendant still has taken a substantial step toward the offense while acting with the requisite intent of that offense. If each of the elements of an offense are fully satisfied, the charged offense will be the offense, not an attempt of that offense. Here, the defendant disseminated matter harmful to minors to a person he believed or intended to be a child less than eighteen years of age. The only element not met for the offense of disseminating matter harmful to minors is that the recipient was not in fact a child less than eighteen years of age. Because the recipient was not a minor, the defendant was charged with *Attempted* Dissemination of Matter Harmful to Minors, rather than Dissemination of Matter Harmful to Minors.

*Id.*

[20] Similarly here, although the completed crime of stalking requires that the State prove that the defendant's conduct "actually causes the victim to feel terrorized, frightened, intimidated, or threatened," the crime of *attempted* stalking does not require such a showing. Rather, all that is required to prove attempted stalking is that the defendant took a substantial step toward committing the crime of stalking while acting with the requisite intent to commit stalking. Although the unambiguous language of the stalking statute clearly requires that, for the commission of the completed offense, the defendant's conduct actually causes

the victim to feel terrorized, frightened, intimidated, or threatened, this fact does not manifest a legislative intent to foreclose application of the general attempt statute to prosecute unsuccessful attempts to commit stalking. We therefore conclude that the court did not abuse its discretion when it denied Pittman's motion to dismiss.

## II.

[21] The next issue is whether the general attempt statute, as applied in this case, is void for vagueness. Pittman argues that "[i]f this case is any indication, the line of what can be charged as attempted stalking appears to be extremely trivial." Appellant's Brief at 19-20. He asserts: "In this case, Pittman and Small had been 'talking' about their relationship. Pittman was certainly adamant about discussing his relationship with Small to the point that he called her a number of times and went to the medical clinic where Small was. Is this really criminal conduct?" *Id.* at 20. He argues that "the State could seemingly charge simple tomfoolery (e.g. the common prank) or even the modest [sic] of domestic disagreements (e.g. moderately impassioned discussion about a romantic relationship)" and that these "hypotheticals or situations certainly elucidate the vagueness analysis." *Id.* He notes that "[e]vidence of the absurdity of" Pittman's charge of attempted stalking "is that *Pittman appears to be the only*

*person in Indiana ever charged or convicted of the crime of attempted stalking.*"[2]  *Id.* at 21.

[22]  The State argues that Pittman waived his vagueness challenge by failing to raise it in a motion to dismiss prior to trial, and that waiver notwithstanding, the attempted stalking statute is not unconstitutionally vague, noting that a vagueness challenge "may be overcome in any specific case where reasonable persons would know that their conduct is at risk."  Appellee's Brief at 19 (quoting *Maynard v. Cartwright*, 486 U.S. 356, 361, 108 S. Ct. 1853, 1857 (1988)).  The State maintains that a statute may be found unconstitutionally vague only if it is vague as applied under the circumstances of that particular case and that Pittman's hypotheticals are immaterial.  The State also suggests that Pittman's arguments in his brief amount to "sanitiz[ing] his behavior [by] describing it as merely being 'adamant' that he wanted to talk to [Small] to discuss their relationship . . . ."  *Id.* at 22.

[23]  As noted in Part I, although Pittman filed a motion to dismiss, he did not raise any constitutional issues, including whether the attempted stalking statute is void for vagueness.  "Generally, the failure to file a proper motion to dismiss raising the Constitutional challenge waives the issue on appeal."  *Payne v. State*, 484 N.E.2d 16, 18 (Ind. 1985); *see also Rhinehardt v. State*, 477 N.E.2d 89, 93

---

[2] Pittman explains in his reply brief that he "did a thorough Lexis Advance search and was unable to locate a single reported (or even unreported) [appellate] case involving attempted stalking."  Appellant's Reply Brief at 10-11.

(Ind. 1985) (holding that defendant failed to preserve claim that a statute was unconstitutionally vague where he failed to raise the issue prior to trial by a timely and proper motion to dismiss). We agree with the State that Pittman waived his vagueness challenge. *See Wiggins v. State*, 727 N.E.2d 1, 5 (Ind. Ct. App. 2000) (holding that the defendant waived his argument that the statute was unconstitutionally vague even though he had filed a motion to dismiss because the motion alleged only that the statute violated the prohibition against ex post facto laws), *trans. denied*.

[24]     Still, some cases have considered challenges to the constitutionality of statutes even where the defendant failed to file a motion to dismiss. *See Baumgartner v. State*, 891 N.E.2d 1131, 1136 (Ind. Ct. App. 2008). Notably, in *Morse v. State*, 593 N.E.2d 194, 197 (Ind. 1992), *reh'g denied*, the Indiana Supreme Court addressed the defendant's challenge to the constitutionality of a statute even though the issue was raised for the first time in a *pro se* motion filed with the court by a defendant who was represented on appeal by counsel who did not raise the issue in the appellant's brief. As explained in *Baumgartner*, the *Morse* Court stated without mentioning *Payne* or *Rhinehardt* that "the constitutionality of a statute may be raised at any stage of the proceeding including raising the issue *sua sponte* by this Court." *Id.* (quoting *Morse*, 593 N.E.2d at 197); *See also Boyd v. State*, 889 N.E.2d 321, 323-324 (Ind. Ct. App. 2008) (following *Morse* in choosing to address on the merits defendant's claim that statute was unconstitutionally vague even though he did not file a proper motion to dismiss and the State argued waiver on appeal), *trans. denied*; *Vaughn v. State*, 782

N.E.2d 417, 420 (Ind. Ct. App. 2003) (citing *Morse* in deciding to address defendant's challenge to constitutionality of statute even though defendant filed no motion to dismiss and State did argue waiver on appeal), *trans. denied*, *superseded by statute on other grounds*.

[25] Considering Pittman's argument on the merits, his challenge to the statute as unconstitutionally vague fails. The constitutionality of statutes is reviewed *de novo*. *Conley v. State*, 972 N.E.2d 864, 877 (Ind. 2012) (citing *State v. Moss-Dwyer*, 686 N.E.2d 109, 110 (Ind. 1997)), *reh'g denied*. "Such review is 'highly restrained' and 'very deferential,' beginning 'with [a] presumption of constitutional validity, and therefore the party challenging the statute labors under a heavy burden to show that the statute is unconstitutional.'" *Id.* (citing *Moss-Dwyer*, 686 N.E.2d at 111-112).

[26] Under basic principles of due process, a law is void for vagueness if its prohibitions are not clearly defined. *Klein v. State*, 698 N.E.2d 296, 299 (Ind. 1998) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 92 S. Ct. 2294 (1972)). A statute is also void for vagueness if its terms invite arbitrary or discriminatory enforcement. *Id.* (citing *Kolender v. Lawson*, 461 U.S. 352, 103 S. Ct. 1855 (1983)). In other words, a criminal statute may be invalidated for vagueness for either of two independent reasons: (1) for failing to provide notice enabling ordinary people to understand the conduct that it prohibits; and (2) for the possibility that it authorizes or encourages arbitrary or discriminatory enforcement. *Brown v. State*, 868 N.E.2d 464, 467 (Ind. 2007) (citing *City of Chicago v. Morales*, 527 U.S. 41, 56, 119 S. Ct. 1849, 1859 (1999); *Healthscript,*

*Inc. v. State*, 770 N.E.2d 810, 815-816 (Ind. 2002)). "A related consideration is the requirement that a penal statute give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden so that 'no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.'" *Id.* (quoting *Healthscript, Inc.*, 770 N.E.2d at 816 (quoting *United States v. Harriss*, 347 U.S. 612, 617, 74 S. Ct. 808, 812 (1954))). In *State v. Downey*, the Court emphasized that "there must be something in a criminal statute to indicate where the line is to be drawn between trivial and substantial things so that erratic arrests and convictions for trivial acts and omissions will not occur. It cannot be left to juries, judges, and prosecutors to draw such lines." 476 N.E.2d 121, 123 (Ind. 1985), *reh'g denied*. "Accordingly, the statutory language must 'convey sufficiently definite warning as to the proscribed conduct when measured by common understanding.'" *Id.* (quoting *Rhinehardt*, 477 N.E.2d at 93).

[27] "A statute is not void for vagueness if individuals of ordinary intelligence could comprehend it to the extent that it would fairly inform them of the generally proscribed conduct." *Klein*, 698 N.E.2d at 299. The statute does not have to list specifically all items of prohibited conduct; rather, it must inform the individual of the conduct generally proscribed. *Brown*, 868 N.E.2d at 467. The examination of a vagueness challenge is performed in light of the facts and circumstances of each individual case. *Id.*

[28] This court has previously examined whether the stalking statutes are void for vagueness, and we held that such statutes were not. *Johnson v. State*, 648

N.E.2d 666, 670 (Ind. Ct. App. 1995). In so holding we noted in part that "[t]he reasonableness standards contained in the statutes provide a constraining and intelligible enforcement standard for those charged with enforcing the statutes" and "[t]hat the State must prove the defendant himself entertained specific intent militates against a determination that the statutes are vague." *Id.* We opined that "the statutes contain standards which indicate where the line is to be drawn between trivial and substantial things so that erratic arrests for trivial acts and omissions will not occur." *Id.*

[29] We believe that, as applied to Pittman, these observations apply with equal force to the crime of attempted stalking. In order to prove attempted stalking the State was required to prove that Pittman acted with the specific intent to commit stalking and that he took a substantial step toward the commission of the crime, which includes conduct reasonably calculated to make the victim feel terrorized, frightened, intimidated, or threatened. Again, "[a] statute is not void for vagueness if individuals of ordinary intelligence could comprehend it to the extent that it would fairly inform them of the generally proscribed conduct," *Klein*, 698 N.E.2d at 299, and the examination of a vagueness challenge is performed in light of the facts and circumstances of each individual case. *Brown*, 868 N.E.2d at 467. We believe that on these facts, which include that, following multiple phone calls where he threatened to kill Small, Pittman traveled to the doctor's office where she was located while armed with a handgun for the specific purpose "to scare his girlfriend," Transcript at 27, the statute for attempted stalking is not void for vagueness.

[30] The next issue is whether the evidence is sufficient to sustain Pittman's conviction of attempted stalking. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995), *reh'g denied*. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.*

[31] The State charged Pittman with attempted stalking as follows:

> On or about March 5, 2014, NOAH PITTMAN did attempt to commit the crime of stalking, the course of conduct includes the following acts:
>
> 1. On March 5, 2014, Noah Pittman called and threatened to kill Natasha Small;
>
> 2. On March 5, 2014, Noah Pittman called Natasha Small and told her she had better not stay in the apartment that evening because he would kill her;
>
> 3. On March 5, 2014, Noah Pittman called Natasha Small and would laugh;
>
> 4. On March 5, 2014, Noah Pittman showed up at St. Vincent's Family Physicians, where Natasha Small had an appointment for

their child in common and Natasha Small observed him at that location;

Which constituted a substantial step toward the commission of said crime of Stalking, which is to engage in a knowing course of conduct involving repeated or continuing harassment of another person, that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and actually caused another person to feel terrorized, frightened, intimidated, or threatened and that while [Pittman] attempted to commit the crime of stalking was armed with a deadly weapon, that is: a handgun . . . .

Appellant's Appendix at 14-15.

[32] Pittman argues that the State failed to prove intent "because one cannot knowingly and intentionally intend the victim to feel terrorized, frightened, intimidated, or threatened." Appellant's Brief at 22. He argues that he "cannot feel for Small" and that he did not complete a substantial step to commit stalking and instead "called Small a number of times, but that is perfectly legitimate communication." *Id.* at 22, 23. He asks the question: "What did Pittman complete? What substantial step did Pittman take?" *Id.* He also contends that the State "failed to prove that [he] attempted to engage in 'repeated or continuing harassment of another person' because [his] conduct was simply not harassing, even in nature, or could it have been." *Id.*

[33] The State maintains that the evidence presented was sufficient to establish that Pittman acted with the requisite state of mind and took a substantial step to convict him of attempted stalking as a class B felony, noting specifically that

"the Legislature did not intend for the knowing and intentional element to apply to the element in the stalking statute that the victim actually feels the intended result; he must simply intend the result." Appellee's Brief at 28.

[34] Pittman suggests in his reply brief that there is caselaw for the proposition that, where the victim does not specifically testify "that 'particular behavior cause[d] her to feel terrorized, frightened, intimidated, or threatened,'" such "testimony *must* be inferred from the *victim's* other testimony." Appellant's Reply Brief at 8 (citing *Johnson v. State*, 721 N.E.2d 327, 333 (Ind. Ct. App. 1999), *trans. denied*). However, *Johnson* actually states that whether a defendant's behavior "caused her to feel terrorized, frightened, intimidated, or threatened . . . . *can* be inferred from the victim's other testimony." 721 N.E.2d at 333 (emphasis added). This proposition does not preclude the State from presenting other evidence to prove that the victim was, in fact, terrorized, frightened, intimidated, or threatened, including testimony of police officers and other witnesses.

[35] Based upon the record, including in particular that Pittman admitted to Officer Sadownik that he was trying to "scare" Small when, after calling her multiple times and threatening to kill her, he came upon her location at the doctor's office armed with a gun and ammunition, we conclude that the State presented evidence of a probative nature from which the jury could find beyond a reasonable doubt that Pittman committed the offense of attempted stalking as a class B felony.

IV.

[36] The next issue is whether Pittman's sentence for attempted stalking as a class B felony is unconstitutional under Article 1, Section 16 of the Indiana Constitution. Article 1, Section 16 provides that "[a]ll penalties shall be proportioned to the nature of the offense." "Though Article 1, Section 16 sweeps somewhat more broadly than the Eighth Amendment, its protections are still narrow." *Knapp v. State*, 9 N.E.3d 1274, 1289 (Ind. 2014), *cert. denied*, 135 S. Ct. 978 (2015). It is violated only when the criminal penalty is not graduated and proportioned to the nature of the offense. *Id.* "Stated differently, a legislatively determined penalty will be deemed unconstitutional by reason of its length only if it is 'so severe and entirely out of proportion to the gravity of the offense committed as to shock public sentiment and violate the judgment of reasonable people.'" *Foreman v. State*, 865 N.E.2d 652, 655 (Ind. Ct. App. 2007) (quoting *Teer v. State*, 738 N.E.2d 283, 290 (Ind. Ct. App. 2000), *trans. denied*), *reh'g denied*, *trans. denied*.

[37] Penal sanctions are primarily legislative concerns and hence, our view is highly restrained by virtue of the separation of powers doctrine. *Person v. State*, 661 N.E.2d 587, 593 (Ind. Ct. App. 1996), *trans. denied*. "We will not disturb the legislative determination of the appropriate penalty for criminal behavior except upon a showing of clear constitutional infirmity." *Moss-Dwyer*, 686 N.E.2d at 111-112. "[F]inding that a statute is unconstitutional should be reserved only for penalties so disproportionate to the nature of the offense as to amount to clear constitutional infirmity sufficient to overcome the presumption of

constitutionality afforded to legislative decisions about penalties." *Id.* at 112 (internal quotations omitted). When considering the constitutionality of a statute, we begin with the presumption of constitutional validity, and therefore, the party challenging the statute labors under a heavy burden to show that the statute is unconstitutional. *Id.* at 112.

[38] Pittman argues that "[t]he statutory scheme and its penal sanctions are unconstitutional" in that "one can be convicted *of a Class B felony* for everyday conduct, and even the modest [sic] of domestic disagreements (as is the case here)." Appellant's Brief at 26. He asserts that "[a]ny scheme that allows for simple, legal conduct be [sic] charged as a Class B felony is more than sever [sic], it is absurd" and that "[i]f a reasonable person . . . was presented with the facts of this case, it would be fair to say that a minimum sentence of six (6) years would be rather shocking for the conduct involved." *Id.* at 27.

[39] The State's position is that Pittman has not met the burden of proving unconstitutionality and that his arguments fail to acknowledge the severity of his criminal actions including "repeatedly calling Natasha, threatening her safety and threatening to kill her a couple of times, taking his mother's gun and loaded magazine, and going to a place she told him not to go with the weapon and bullets to confront" her and their infant child. Appellee's Brief at 30.

[40] The record reveals that the trial court took great care in arriving at Pittman's minimum six-year sentence. Indiana courts have previously stated that "a sentence may be unconstitutional by reason of its length, if it is so severe and

entirely out of proportion to the gravity of [the] offense committed as 'to shock public sentiment and violate the judgment of a reasonable people.'" *Teer*, 738 N.E.2d at 290 (quoting *Pritscher v. State*, 675 N.E.2d 727, 731 (Ind. Ct. App. 1996) (quoting *Cox v. State*, 203 Ind. 544, 549, 181 N.E. 469, 472 (1932), *reh'g denied*)).

[41] At the time of the offense, the stalking statute classified stalking while armed with a deadly weapon as a class B felony, and the attempt statute specified that "[a]n attempt to commit a crime is a felony or misdemeanor of the same class as the crime attempted." Ind. Code § 35-41-5-1(a). The legislature determined that the advisory sentence for a class B felony was ten years, with up to ten years added for aggravating circumstances and up to four years subtracted for mitigating circumstances, for a minimum sentence of six years. Ind. Code § 35-50-2-5. Such a sentencing range and the sentence imposed do not "shock public sentiment" or "violate the judgment of a reasonable people." *See Teer*, 738 N.E.2d at 290. We find no violation of Article 1, Section 16 of the Indiana Constitution.

V.

[42] The final issue is whether the crime of carrying a handgun without a license is facially unconstitutional. Pittman acknowledges that "[t]his statutory scheme has been upheld as constitutional by this Court in *Lewis v. State*, 484 N.E.2d 77 (Ind. Ct. App. 1985)[, *reh'g denied*, *trans. denied*,] and by the Indiana Supreme Court in *Harris v. State*, 716 N.E.2d 406 (Ind. 1999)," but he "believes this issue

should be revisited" because those cases "fail to recognize the fundamental principle and right that the State has the burden to prove each and every element of a crime beyond a reasonable doubt." Appellant's Brief at 28. He also asserts in a footnote that, "[a]s it stands the State is merely required to prove you possessed a handgun, which is clearly not a crime" and that "[f]or this reason, Ind. Code § 35-47-2-24(a) is also an unconstitutional burden on a defendant's rights under the Second Amendment of the United States Constitution [and] Article 1 § 32 of the Indiana Constitution." *Id.* at 30 n.12.

[43] The State notes that "Pittman confuses an affirmative defense available under the statute . . . with an element of the offense" and that "[p]roof of not possessing a license is not an element of the statute, and thus not the State's burden." Appellee's Brief at 31, 32. The State also posits that Pittman's arguments regarding the Second Amendment and Article 1, Section 32 of the Indiana Constitution constitute assertions without cogent argument, citation to the record, or legal authority, that such objections were not made to the trial court, and that accordingly he has waived those arguments.

[44] Pittman acknowledges that the Indiana Supreme Court held in *Harris* that "once the State has established that the defendant carried a handgun on or about his person, away from his residence or place of business, the burden then shifts to the defendant to demonstrate that he possessed a valid license." 716 N.E.2d at 412. The *Harris* Court explained that Ind. Code § 35-47-2-1, which provided at the time of Pittman's offense that "Except as provided in subsections (b) and (c) and section 2 of this chapter, a person shall not carry a

handgun in any vehicle or on or about the person's body without being licensed under this chapter to carry a handgun," (subsequently amended by Pub. L. No. 158-2013, § 573 (eff. July 1, 2014), that "[p]roof that [the defendant] had a license is an exception to the offense, and the burden is on [the defendant] to prove he possessed a valid license," and further that Ind. Code § 35-47-2-24 expressly places the burden on the defendant to prove he or she has a license or was exempt from the statute. 716 N.E.2d at 411 (quoting *Washington v. State*, 517 N.E.2d 77, 79 (Ind. 1987)). Also, this court has specifically addressed the issue in *Elliott v. State*, 435 N.E.2d 302 (Ind. Ct. App. 1982), in which we explained that "it is not unconstitutional for a statute to impose the burden of proof upon a defendant for proof of an issue where the issue is not an element of the crime" that "proof of the presence of a license to carry a handgun is an exemption or exception to, and not an element of, the crime of carrying a handgun without a license," and that the statutory scheme is constitutional. 435 N.E.2d at 304-305. Accordingly, we find that Pittman's constitutionality challenge to Ind. Code § 35-47-2-1 and Ind. Code § 35-47-2-24 fails.

[45] To the extent that Pittman cites in a footnote to the Second Amendment of the United States Constitution and Article 1 § 32 of the Indiana Constitution, we agree with the State that these statements by Pittman are not accompanied by cogent argument, citation to the record, or legal authority, and that accordingly he has waived those arguments. *See Cooper v. State*, 854 N.E.2d 831, 834 n.1 (Ind. 2006) (holding that the defendant's contention was waived because it was "supported neither by cogent argument nor citation to authority"); *Shane v.*

*State*, 716 N.E.2d 391, 398 n.3 (Ind. 1999) (holding that the defendant waived argument on appeal by failing to develop a cogent argument); *Smith v. State*, 822 N.E.2d 193, 202-203 (Ind. Ct. App. 2005) ("Generally, a party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."), *trans. denied*.

## *Conclusion*

[46] For the foregoing reasons, we affirm Pittman's convictions and sentence for attempted stalking as a class B felony and carrying a handgun without a license as a class A misdemeanor.

[47] Affirmed.

Riley, J., and Altice, J., concur.