## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 24 2016, 10:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| P. Jeffrey Schlesinger | Gregory F. Zoeller |
| Crown Point, Indiana | Attorney General of Indiana |
| | |
| | James B. Martin |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dominique D. Randolph, | August 24, 2016 |
| *Appellant-Defendant,* | Court of Appeals Cause No. 45A04-1512-CR-2358 |
| v. | Appeal from the Lake Superior Court |
| State of Indiana, | The Honorable Salvador Vasquez, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 45G01-1412-F3-21 |

**Barnes, Judge.**

# Case Summary

[1] Dominique Randolph appeals his conviction and sentence for Level 3 felony armed robbery. We affirm.

# Issues

[2] Randolph raises three issues, which we restate as:

    I.    whether the trial court properly admitted the victim's testimony that his wife died of cancer shortly before the robbery;

    II.    whether the sentence violates the proportionality clause of the Indiana Constitution; and

    III.    whether the sentence is inappropriate in light of the nature of the offense and the character of the offender.

# Facts

[3] On December 8, 2014, Thomas O'Neill left his Hammond apartment at approximately 5:30 p.m. to purchase a pack of cigarettes. As he was walking on Cedar Street, he saw a gray SUV, and he was approached by three men. They circled him and said, "Where's it at?" Tr. p. 86. O'Neill responded, "What?" and they said, "Give it up," and "Don't move." *Id.* One of the men then pulled a gun out and pointed it at O'Neill while another man went through O'Neill's pockets. They took sixty dollars from O'Neill's pocket. The man with the gun said, "We're the new police around here now," and they left in the gray SUV. *Id.* at 94. O'Neill ran to a nearby business and called 911. A police

officer met with O'Neill and got a description of the vehicle. The officer told O'Neill to go home and wait for them to call.

[4] Officers soon located a gray SUV and pursued two occupants, Maurice McCoy and Deandre Barnes, on foot. Randolph was located hiding in the SUV. When a police officer picked up O'Neill and took him to the scene, O'Neill identified Randolph, Barnes, and McCoy as the men who robbed him. O'Neill was unable to identify a fourth man that had been detained. McCoy had sixty-one dollars in cash in his possession. A handgun was later found in a backyard near where one of the foot chases occurred.

[5] Near the time and location of the O'Neill robbery, Nicholas Ruiz was also robbed. Randolph was charged with the Ruiz robbery, and a jury found him guilty of Level 3 felony armed robbery. In July 2015, a trial court sentenced him to nine years with four years suspended to probation.

[6] With respect to the O'Neill robbery, the State charged Randolph, Barnes, and McCoy with Level 3 felony armed robbery. The trial court granted a motion in limine to exclude evidence of the Ruiz robbery. At the jury trial, O'Neill identified Randolph as the man who pointed a firearm at him, Barnes as the man who took the money, and McCoy as the man who searched his pockets. A jury found the men guilty as charged. In November 2015, the trial court sentenced Randolph to ten years in the Department of Correction. Randolph now appeals.

# Analysis

## *I. O'Neill's Testimony*

[7] Randolph argues that the trial court abused its discretion by admitting O'Neill's testimony that his wife had died shortly before the robbery. Generally, a trial court's ruling on the admission of evidence is accorded "a great deal of deference" on appeal. *Hall v. State*, 36 N.E.3d 459, 466 (Ind. 2015). Because the trial court is best able to weigh the evidence and assess witness credibility, we review its rulings on admissibility for abuse of discretion. *Id.* We will reverse only if a ruling is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Id.*

[8] O'Neill testified on direct and cross-examination that he was nervous and upset when talking to the officer after the robbery. During cross-examination of O'Neill, he was repeatedly questioned by the defendants' attorneys regarding discrepancies between his identification of the parties on the evening of the robbery, his deposition testimony, and his trial testimony. He was questioned regarding the reasons for the discrepancies, medications that he was taking, and his mental health status and diagnosis. During redirect examination, the State asked: "I know that being robbed was an upsetting incident to you that night. Was there anything else that had kind of been upsetting you that evening?" Tr. p. 159. O'Neill answered, "Well, a month-and-a-half prior to this robbery, my wife died from brain cancer. She had to go through hospice and gave her morphine and Adavan [sic] to keep her comfortable. And she died- -." *Id.* Randolph's attorney objected that the question was "outside the scope" and

"not relevant." *Id.* The trial court overruled the objections, and O'Neill testified: "That's what happened. I will probably never get over my wife's death, and to have this happen to me a month-and-a-half later, it's just terrible." *Id.* at 160.

[9] On appeal, Randolph argues that the testimony regarding O'Neill's wife was not relevant and that any probative value was outweighed by its prejudicial effect. Randolph argues that, "[d]ue to the uncertainty of Mr. O'Neill's identification of the defendants, any evidence that would generate additional sympathy for him would have carried significant weight." Appellant's Br. p. 9.

[10] The State argues that the evidence was properly admitted because the defendants had inquired into O'Neill's mental health history and prescribed medications in an effort to undermine his credibility. The State contends that the defendants put O'Neill's state of mind at issue and that "matters related to any mental or emotional distress [O'Neill] may have been under during the crime or while giving statements regarding the crime were fair game on redirect." Appellee's Br. p. 12.

[11] To the extent that the trial court erred by allowing the testimony, we conclude that any error was harmless. Randolph was found hiding in the vehicle that O'Neill identified as containing the men who robbed him. O'Neill repeatedly identified Randolph as one of the men who robbed him. Randolph and the other defendants had already questioned O'Neill extensively regarding discrepancies in his identification of the defendants. Moreover, Randolph

concedes that "if Mr. O'Neill was still traumatized by the death of his wife at the time of the robbery, it would make his identification less certain, thereby injuring the State's case." Appellant's Reply Br. p. 6. Any error in the admission of O'Neill's brief testimony regarding the death of his wife did not affect Randolph's substantial rights.

## II. Proportionality Clause

[12] Randolph argues that his sentence violates the proportionality clause of the Indiana Constitution. Article 1, Section 16 of the Indiana Constitution requires that "[a]ll penalties shall be proportioned to the nature of the offense." "Though Article 1, Section 16 sweeps somewhat more broadly than the Eighth Amendment, its protections are still narrow." *Knapp v. State*, 9 N.E.3d 1274, 1289 (Ind. 2014), *cert. denied*. The proportionality clause is violated "only when the criminal penalty is not graduated and proportioned to the nature of the offense." *Id.* at 1289-90. We "cannot set aside a legislatively sanctioned penalty merely because it seems too severe." *Id.* at 1290. The proportionality clause "requires us to review whether a sentence is not only within statutory parameters, but also constitutional as applied to the particular defendant." *Id.* A sentence may be unconstitutional by reason of its length if it is so severe and entirely out of proportion to the gravity of the offense committed as "to shock public sentiment and violate the judgment of a reasonable people." *Pittman v. State*, 45 N.E.3d 805, 819 (Ind. Ct. App. 2015).

[13] Randolph argues that his sentence violates the proportionality clause because he was convicted of two robberies that were committed within minutes of each

other and received different sentences for each robbery. Both convictions were for Level 3 felonies. Under Indiana Code Section 35-50-2-5(b), a person that commits a Level 3 felony "shall be imprisoned for a fixed term of between three (3) and sixteen (16) years, with the advisory sentence being nine (9) years." For the Ruiz robbery, a trial court sentenced Randolph to the advisory sentence of nine years with four years suspended to probation. For the O'Neill robbery, a different trial court sentenced Randolph to ten years in the Department of Correction. At the sentencing hearing, the trial court noted the sentence in the Ruiz case and stated: "I am not suspending any of that to be served on probation, respectful of Judge McGraw's sentence. It's not a sentence that, in this case, I find to be the appropriate or fair sentence." Tr. p. 442.

[14] The sentence imposed in the O'Neill robbery is well within the range allowed by Indiana Code Section 35-50-2-5. In fact, it is only one year more than the advisory sentence and the sentence imposed for the Ruiz robbery. Although the trial court in the Ruiz robbery case suspended part of the sentence to probation, the additional felony conviction at the time of the sentencing for the O'Neill robbery conviction and emotional harm to the victim could justify the different sentences. We cannot say that the difference between the sentences is so severe and out of proportion to the gravity of the offense committed as "to shock public sentiment and violate the judgment of a reasonable people." *Pittman*, 45 N.E.3d at 819. Randolph's argument fails.

## III. Inappropriate Sentence

Next, Randolph argues that his sentence is inappropriate. He asks that we revise the sentence to match the sentence imposed for his conviction in the Ruiz robbery.

Indiana Appellate Rule 7(B) permits us to revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. Although Appellate Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id.* "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." *Id.*

The principal role of Appellate Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime,

the damage done to others, and myriad other factors that come to light in a given case. *Id.* at 1224.

[18] The nature of the offense is that Randolph and his co-defendants robbed fifty-four-year-old O'Neill at gunpoint. At the trial, O'Neill identified Randolph as the man with the gun and the man that said, "We're the new police around here now." Tr. p. 94. The trial court noted that O'Neill was "dramatically affected" by the robbery and that he was "now afraid to leave his home." Appellant's App. p. 83.

[19] As for the character of the offender, the trial court found nineteen-year-old Randolph's criminal history as an aggravating factor. Randolph had numerous juvenile arrests and a 2013 conviction in Illinois for possession of a controlled substance. He was on probation for that conviction at the time of the instant offense. Additionally, he was convicted of Level 3 felony armed robbery for the Ruiz robbery, which occurred on the same night as the instant offense. The trial court noted that he had been given leniency in the past but continued participating in criminal behavior. The trial court found Randolph's "sad and challenging childhood" to be a mitigator of relatively low weight. *Id.*

[20] Randolph argues that he should have been sentenced to the same sentence as was given in the Ruiz robbery. However, nothing required the trial court here to give the same sentence. In fact, the trial court noted the sentence for the Ruiz robbery but believed that it was too lenient. Moreover, we were provided with no information regarding the details of the Ruiz robbery. O'Neill,

however, was significantly affected by the instant robbery. *See Hogan v. State*, 274 Ind. 119, 122, 409 N.E.2d 588, 591 (1980) (holding that extreme physical, mental, and emotional harm to elderly robbery victims was a proper consideration in sentencing defendant). Given Randolph's criminal history and the nature of the offense, we cannot say that the ten-year sentence is inappropriate.

## Conclusion

Any error in the admission of evidence concerning the death of O'Neill's wife was harmless. Randolph's sentence does not violate the proportionality clause, and we cannot say it is inappropriate. We affirm.

Affirmed.

Riley, J., and Bailey, J., concur.