

**FILED**

May 25 2018, 10:17 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT
Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James R. Eisert,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | May 25, 2018<br><br>Court of Appeals Case No.<br>69A01-1708-CR-1938<br><br>Appeal from the Ripley Circuit<br>Court<br><br>The Honorable Ryan King, Judge<br><br>Trial Court Cause No.<br>69C01-1603-F5-11 |

**May, Judge.**

[1] James R. Eisert appeals his six-year sentence for Level 5 felony stalking[1] and Class A misdemeanor invasion of privacy.[2] He argues that sentence is inappropriate in light of his character and offenses. We affirm.

# Facts and Procedural History

[2] Eisert was married to G.E., and together they had two children, L.E. and M.E. By December 2015, Eisert and G.E. were estranged, L.E. was at college, and M.E. lived with G.E. On December 26, 2015, Eisert battered G.E. and M.E., and he threatened to hurt G.E. and to kill G.E., M.E., and L.E. Eisert was arrested, and the State charged him with multiple counts of battery on December 30, 2015. The trial court released Eisert on bond pending trial and ordered him to have no-contact with his ex-wife or children, but on January 1, 2016, Eisert was arrested for violating that no contact order. The court once again released Eisert from custody and entered another no contact order as to G.E. and M.E.

[3] Following the violence in December 2015, G.E. consulted with workers at a domestic violence shelter to develop a safety plan for herself and her children. G.E. changed the locks on all the doors to her home and added two additional locks to each door. She installed security cameras that recorded what was

---

[1] Ind. Code § 35-45-10-5 (2014).

[2] Ind. Code § 35-46-1-15.1(1) (2014).

happening at her house's back door and basement door. She and M.E. changed their routines to ensure their arrival and exit at work and school, respectively, were monitored by others.

[4] On February 5, 2016, after 10:30 p.m., Eisert climbed onto the roof of G.E.'s house, entered the attic through a window, and then used razor blades to cut his way through the dry wall between the attic and the living space. G.E. was home alone, and when she heard someone trying to break into the house, she called M.E. and then called 911. G.E. was on the line with the 911 operator when she saw Eisert emerge. G.E. screamed repeatedly and told the operator she was running outside her house, but then the phone went dead. G.E. tried to run out the front door, but Eisert grabbed her by the hair, pulled her to the garage, and tried to force her into a car. Eisert told G.E. that they needed to "go talk to Jesus," (Tr. Vol. II at 36), which G.E. believed was a threat to kill her, and she was "scared to death." (*Id*.) Before Eisert could get G.E. into a car, M.E. returned home. Eisert fled the house and hid near the woods until police used heat sensors to locate him. G.E. was so terrified that she needed medical attention at the scene.

[5] On February 9, 2016, under Case Number 69C01-1603-F5-11, the State charged Eisert with Level 5 felony stalking, Level 6 felony residential entry,[3] and Class A misdemeanor invasion of privacy. In May 2017, Eisert and the State entered

---

[3] Ind. Code § 35-43-2-1.5 (2014).

an agreement whereby Eisert would plead guilty to stalking and invasion of privacy, while the State would dismiss the residential-entry charge.[4] The trial court accepted Eisert's plea.

[6] The trial court held a sentencing hearing at which the State and Eisert presented evidence. The court then entered a very detailed sentencing order to explain its sentencing:

> **The Aggravating Factors are as follows:**
>
> 1)   <u>The trauma suffered by the victim was significant and continues to impact her, as well as continues to impact her children.</u> First, immediately after the crime the victim suffered an anxiety related episode that resulted in law enforcement calling an ambulance – she broke-down because only moments before she believed that she was going to be killed by her estranged husband. Second, Kim Bowman, Safe Passage Director of Shelter, testified that the safety plan implemented to protect the victim was the most extensive Safe Passage has ever implemented: the victim had a security system installed (which is why the Defendant accessed the home through the attic), the locks on the marital home were changed, guns were removed, and the son they share was escorted to and from the school house doors. Bowman stated that the Lethality Assessment indicated that the victim and her family were in danger. Third, during the sentencing hearing, the fear the victim had, and continues to have, is readily apparent

---

[4] The agreement simultaneously disposed of three other criminal actions against Eisert. In Case Number 69D01-1512-F6-181, Eisert would plead guilty to three counts of battery, two as misdemeanors and one as a felony, and the State would dismiss other pending charges. The State also agreed to dismiss all charges under Case Number 69D01-1601-CM-4 and Case Number 69D01-1608-CM-240.

due to her demeanor of fear. Fourth, the statements of the children concerning the events herein show that they too fear the Defendant. The significant impact on the victim and her children is a substantial aggravating factor.

2) <u>The nature and circumstances of the crime are particularly egregious.</u> The events of February 5, 2016, are substantially aggravating: Defendant broke into the victim's attic by prying open a window, then cut a hole in the drywall between the attic and the residential portion of the home using a razor blade to gain access to the living quarters, attempted to pull the victim into a car while telling her they were going to go "talk to Jesus," and when law enforcement responded to the home Defendant fled and hid until he was discovered via the use of thermal imaging. Clearly stated, the events of that evening were terrifying and went far beyond the "course of conduct" necessary to prove Stalking.

3) <u>Defendant's criminal history and history of controlled substance related criminal behavior.</u> First, Defendant's felony conviction in 60D01-1512-F6-181 involved the same victims. Second, the Defendant's substance abuse history has resulted in two (2) 30-day inpatient treatment stays. Third, the Court is further concerned by the Defendant's employment motto of "If you can pass a drug test, we don't want you." These matters reflect poorly on the Defendant's character and are an aggravating factor. This aggravating factor is of significant weight, however not as heavy as the first two aggravators.

4) <u>Defendant, twice, recently violated conditions of bond.</u> This aggravating factor is also of significant weight. The Court gives this factor the appropriate weight due.

**The Mitigating Factors are as follows:**

1) The Defendant appears remorseful and has, while incarcerated, regularly attended AA/NA and religious counseling. This mitigating factor is of some weight, however the Court places these actions in their proper light: attending programs while the Defendant had little to nothing else to do compares unfavorably to Defendant's repeated refusal to follow the law and court orders when he was previously released.

The Court does not find the guilty plea and acceptance of responsibility to be a mitigating factor because the Defendant has already been rewarded for his guilty plea via the agreed dismissal of Cause Numbers 69D01-1601-CM-004 and 69D01-1608-CM-0240.

The Court weighs the Aggravating and Mitigating Factor[s] and finds that the Aggravating Factors grossly and substantially outweigh the Mitigating factors.

(Appellant's App. Conf. Vol. 2 at 83-4) (formatting in original). The court imposed a six-year sentence for stalking and a one-year sentence for invasion of privacy. The court ordered the sentences served concurrently, as required by the plea agreement, and then suspended one year to GPS-monitored probation.

# Discussion and Decision

Eisert asserts his sentence is inappropriate. We may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. *Williams v. State*, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008) (citing

Ind. Appellate Rule 7(B)). We consider the aggravators and mitigators found by the trial court and also any other factors appearing in the record. *Baumholser v. State*, 62 N.E.3d 411, 417 (Ind. Ct. App. 2016), *trans. denied*. The appellant must demonstrate his sentence is inappropriate. *Id*. at 418.

[8] When considering the nature of the offense, the advisory sentence is the starting point to determine the appropriateness of a sentence. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g* 878 N.E.2d 218 (Ind. 2007). The sentencing range for a Level 5 felony is "a fixed term of between one (1) and six (6) years, with the advisory sentence being three (3) years." Ind. Code § 35-50-2-6 (2014). A person convicted of a Class A misdemeanor may be imprisoned for "a fixed term of not more than one (1) year." Ind. Code § 35-50-3-2 (1977).

[9] The court imposed six years for stalking and one year for invasion of privacy and, as required by the plea agreement, ordered the sentences served concurrently. Thus, the court imposed the maximum possible sentence for the crimes to which Eisert pled guilty. Eisert claims this is inappropriate for his crimes because he "did not physically harm G.E., other than the fright he caused which required medical treatment." (Br. of Appellant at 11.)

[10] Contrary to Eisert's assertion, the lack of physical harm to G.E. does not minimize the horrendous nature of his crimes. Invasion of privacy[5] and

---

[5] Invasion of privacy occurs when a person knowingly or intentionally violates one of various forms of protective or no contact orders. Ind. Code § 35-46-1-15.1 (2014).

stalking[6] are crimes that can be accomplished by telephone calls, emails, letters, or rung doorbells. *See*, *e.g.*, Ind. Code § 35-45-10-3 (1993) (for purposes of stalking, "'impermissible contact' includes but is not limited to knowingly or intentionally following or pursuing the victim"); *Pittman v. State*, 45 N.E.3d 805, 817 (Ind. Ct. App. 2015) (stalking statute not void for vagueness when defendant made repeated phone calls threatening victim's death and showed up with a gun at a doctor office where victim was); *McElfresh v. State*, 40 N.E.3d 1259, 1263-64 (Ind. Ct. App. 2015) (sending letter to third party, asking third party to deliver message to protected person, when third party fails to deliver the message, is attempted invasion of privacy), *summarily aff'd by McElfresh v. State*, 51 N.E.3d 103, 107 (Ind. 2016) (citing App. R. 58(A)(2)); *Hatchett v. State*, 33 N.E.3d 1125, 1130 (Ind. Ct. App. 2015) (affirming invasion of privacy based on telephone call). Instead of contacting G.E. by one of those comparatively less-invasive forms, Eisert, who had repeatedly threatened to batter and kill G.E., climbed onto the roof of her house, broke through a window into the attic, and cut his way from the attic into the living quarters of the house. He then grabbed G.E. and attempted to place her in a car so that he could take her to "talk to Jesus." (Tr. Vol. II at 36.) That Eisert's attempt to take G.E. from

---

[6] "'[S]talk' means a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." Ind. Code § 35-45-10-1 (1993). "'[H]arassment' means conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress." Ind. Code § 35-45-10-2 (1993).

the home was foiled by the arrival of other people does not persuade us to ignore that his statement suggests he intended to hurt G.E. Nor do we need to overlook the increased terror that would be caused by his method of entry. Nothing about Eisert's crimes suggests a six-year sentence is inappropriate.

[11] When considering the character of the offender, one relevant fact is the defendant's criminal history. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). The significance of a criminal history in assessing a defendant's character varies based on the gravity, nature, and number of prior offenses in relation to the current offense. *Id*. Eisert asserts his criminal history does not justify an enhanced sentence because, prior to these recent domestic incidents, he had only "a substance-related driving offense." (Br. of Appellant at 11.) While Eisert did not have a long history of convictions, the fact that he repeatedly violated pre-trial release and court orders when committing multiple invasions of privacy in a two-month period does not suggest Eisert is a person who respects the law or the court's authority.

[12] Eisert also argues the recent domestic incidents occurred because he "briefly fell off the rails due to his drug addiction." (Br. of Appellant at 11.) However, G.E. testified Eisert had battered her and the children in prior years but she had not reported those incidents to authorities. This led the court to note that Eisert looked more like "a domestic abuser than a drug abuser." (Tr. Vol. II at 83.) While Eisert's poor behavior choices may have been exacerbated by drug use

during this two-month period, we reject his suggestion that his drug use was the root of his problem.[7]

[13] Finally, Eisert claims that, because of his attendance at Bible study, AA, and NA, he is "not the same man who terrified his wife and son in early 2016." (Br. of Appellant at 13.) While we hope spirituality and sobriety have transformed Eisert into a man who would not commit the same mistakes he made in his past, only time will tell whether Eisert truly has changed. (*See* Tr. Vol. II at 85 (court notes Eisert is a model inmate, but he violates bond when released).) Eisert's consistent attendance at those meetings while incarcerated does not so rehabilitate his character that we can say a six-year sentence is inappropriate. *See*, *e.g.*, *Smith v. State*, 839 N.E.2d 780, 788 (Ind. Ct. App. 2005) (eight-year sentence for stalking not inappropriate when defendant contacted victim dozens of times).

[14] Because a six-year sentence is not inappropriate for Eisert's character and offenses, we affirm the trial court's judgment.

[15] Affirmed.

Riley, J., and Mathias, J., concur.

---

[7] Nor is his character bolstered by his failure to access help for his drug abuse problem prior to committing the heinous acts at issue herein.